**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CASE NO. 19-CR-391 (JDB) |
| : | |
| : | |
| BRITTANY BAILEY, : | |
|           Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**REQUEST FOR RECONSIDERATION AND REVIEW OF ORDER OF DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defense's latest request for reconsideration and review of the order of detention in this matter, styled as a second emergency motion for release and motion for reconsideration. This is Defendants <u>fifth</u> motion for release from detention in this case and the <u>third</u> motion for reconsideration before your Honor. As with prior motions for reconsideration, the defense still does not engage with the detention factors pursuant to 18 U.S.C. 3142, attempt to refute the dangerousness of Ms. Bailey, provide a feasible plan for home confinement, nor explain how release to home confinement (even if practicable) would serve to mitigate this danger given the charged offenses. That is because it cannot.

Instead, the defense again relies on Defendant's health conditions and COVID-19, both of which already have been considered and rejected by this Court as bases for release in this particular case. Given the nature of offenses at issue and the facts of this case, neither the Defendant's health conditions nor COVID-19 constitute sufficient changed circumstances to warrant release, and the Court's decision in *Banks* does not support release.

1

The basic facts establishing the Defendant's dangerousness have not changed. Ms. Bailey has been indicted on four violent offenses, the lead count of which carries a 15 year mandatory minimum sentence. Contrary to Defendant's assertion, she was not merely one of several moderators of a chatroom to distribute child pornography. Rather she herself purposefully created multiple internet groups to facilitate the distribution of large quantities of child pornography and ran those groups herself. She also distributed child pornography herself, discussed and encouraged the sexual abuse of children, including her own children, and created a child pornographic image of her own prepubescent daughter, the latter of which the defense does not even try to address because it plainly establishes the high level of danger she presents to the community (even in her physical condition).

The defense also still fails to put forth a feasible plan for the Defendant's release. It provides an address in North Carolina where the Defendant could purportedly live, but no indication how she could travel to that location consistent with her safety and the safety of the community or without presenting a flight risk. The address itself is also a non-starter, as by the defense's own admissions: it has not been approved by pre-trial in this case, a convicted felon already lives in the home, and there would still be internet usage in the home.

Even if the defense did proffer a feasible plan, however, it would still fail to mitigate the high-level of danger due to the specific nature of these crimes. These are electronically-based offenses that Ms. Bailey committed while she was at home. As pre-trial has stated in this and other cases, they cannot effectively monitor and ensure compliance with a "no internet-capable electronic devices" condition, due to the ubiquity of internet capable devices, ease of access, and

pre-trial's own resource constraints, and there is no evidence from the defense that it would be any different in North Carolina.

Likewise, given the electronic nature of the particular offenses, neither the Defendant's health conditions (which have been repeatedly raised and considered by the court) nor COVID-19, fundamentally changes the analysis or alters the conclusion that the Defendant should continue to be detained in this case. Contrary to defense's argument, *Banks* does not support release.

## ARGUMENT

### I.   The Bail Reform Act Factors, Considered by the Magistrate Judge and Your Honor in Previous Detention Determinations, Still Strongly Favor Detention.

Because the Defendant was indicted on multiple crimes of violence and crimes involving a minor victim, there is a rebuttable presumption of detention in this case under 18 U.S.C. § § 3142(e)(2) & (3)(E). The Defendant again offers no evidence or argument to rebut this presumption.

On reconsideration, your Honor should again analyze the same statutory factors considered by the magistrate judge and Your Honor previously including (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community, and the risk of flight, which would be posed by the defendant's release. 18 U.S.C. § 3142(g). Respectfully, in this case, even in light defendant's health conditions and the COVID-19 pandemic, these factors again support continued detention.

First, as discussed previously, the nature and circumstances of the offense are egregious. The Defendant was indicted on multiple crimes of violence against children, including one, Advertising Child Pornography, that carries a mandatory minimum sentence of 15 years'

incarceration. Moreover, her actions in this case go far beyond the standard advertising or distribution of child pornography. She was not a passive participant, or merely one of several moderators in a single group, as suggested by defense. Rather, in addition to her moderating Taboo Parents group, she actively created multiple additional child pornography internet groups herself, set the rules herself, and invited multiple people she believed were pedophiles to join those groups, in order to discuss child sexual abuse and facilitate the distribution of child pornography. She herself sent some of the most disturbing child pornography possible, including links to videos depicting children as young as toddlers being sexually abused and anally penetrated. She sent child pornography in multiple groups and over direct messenger.

She also actively and explicitly discussed sexually abusing her own children and encouraged others to sexually abuse her children. And, she produced at least one child pornography image of her own daughter, which not only constitutes a separately chargeable federal offense in the Western District of Missouri with a fifteen year mandatory minimum, but also demonstrates that she willing to engage in more that the "fantasy" of illegal sexual acts and underscores the dangerousness of her conduct. This factor strongly favors her detention.

Second, as summarized in the Government's prior filings, the evidence against the defendant is overwhelming, including irrefutable electronic evidence, and the Defendant's own admission of her online identity as well as her admission of viewing and distributing child pornography. Therefore, the weight of the evidence strongly favors her detention.

Third, the Defendant's history and characteristics also weigh in favor of detention. Defense Counsel has repeatedly brought the Defendant's medical condition to the attention of the Court as well as her lack of criminal record. Indeed, the Court has multiple times acknowledged both in its

4

analysis. However, as the Court noted, the fact that she has two children, that she discussed sexually abusing and encouraging others to sexually abuse them, as well the fact that she took a child pornographic image of one of them, more than negates these mitigating factors. Therefore, this factor too weighs in favor of detention.

Finally, the fourth factor, the nature and seriousness of any danger to the community, strongly favors detention. The Defendant's actions violated, sexually exploited, and endangered her own children for her apparent sexual gratification and the sexual gratification of others. She also victimized countless additional children by sharing child pornography of them, incentivizing sharing child pornography, creating new forums to share more child pornography, and even cheering on the children depicted's sexual abuse. Her physical limitations did not stop her from doing any of the aforementioned activities and would not likely do so in the future given the nature of the offenses. As Magistrate Judge Meriweather recognized, child pornography offenses are different than many other dangerous, violent offenses and that given the nature of these offenses "[e]ven with her serious medical condition, Ms. Bailey presents a danger to the community and her own children, as the crimes she allegedly committed were internet-based and do not require significant mobility." ECF No. 26 at 9.  Home confinement would not mitigate these dangers, especially where pre-trial cannot effectively monitor and ensure compliance with a "no-internet capable device condition," and COVID-19 may actually make recidivism easier rather than harder by increasing the number of adults and children at home on electronic devices.

Again, the Defendant has produced no new evidence or argument to negate the analysis above or to challenge the Court's Bail Reform Act conclusions in each of its prior detention

decisions in this case, including its April 2nd decision denying release subsequent to the onset of the COVID-19 pandemic.

## II. COVID-19 Does Not Change The Conclusion That The Defendant Should Continue To Be Held In This Case

COVID-19 is a dangerous global pandemic that may continue to pose a risk to the Defendant. However, as the court has recognized, it cannot be viewed as a change sufficient in every case to reverse the bond determination such that it leads to the wholesale release of all violent defendants with health conditions, such as Ms. Bailey. In this particular case, where the defendant is indicted on multiple violent offenses against children and her release into home confinement would not substantially mitigate the danger to others, it was not and still is not a sufficient compelling reason or changed circumstance.

The government is aware that the Court may reconsider bond under changed circumstances, and that 18 U.S.C. 3142(i)(4) could be read to allow temporary pre-trial release of a defendant into the custody of another where it "necessary for the preparation of the person's defense or for another compelling reason." However, even in applying these standards, the Court should still assess the defendant's particularized factors in determining whether to release her. See United States v. Lee, 19-cr-298, at *9 (KBJ) (D.D.C. March 30, 2020) ("[T]he relevant statutory inquiry is not the benefits that a defendant's release would bring about (however significant) or the harms that his incarceration would cause (however substantial). Rather, the statute requires the Court to evaluate "the danger" that "would be posed by the person's release."). Here, given the danger posed by the Defendant and the failure of home confinement (even if feasible) to neutralize this danger due to the nature of the offense, this case still presents no such compelling reason or circumstance to warrant reconsideration and release.

6

As an initial matter, as discussed above (and previously recognized by this Court), the defendant's charged offenses and actions in this case demonstrate the danger that she presents to the community. While isolation and home confinement due to COVID-19 may mitigate the danger posed and risk of recidivism in some types of cases—for example in a bank robbery or certain types of violent street crime cases—that is not so here. The Defendant's offense is electronically-based and was apparently committed while she was at home in the first place. As pre-trial has stated in other cases, they cannot effectively monitor and ensure compliance with a "no internet-capable electronic devices" condition, due to the ubiquity of internet capable devices, ease of access, and pre-trial's own resource constraints.  The defense has presented no evidence that North Carolina's pretrial arm (if they would even accept the case as a courtesy supervision) would be any different. This is likely to be even more true due to the safety concerns and increased resource limitations as a result of COVID-19. Therefore, there is no evidence that the Defendant would be less likely to reoffend (and thus present a danger) despite COVID, and the increased presence of other adults and children at home because of the pandemic make actually provide more opportunity for reoffending in this particular case.

Second, the Defendant's release under the circumstances proposed by the defense is not feasible; nor would it be effective to mitigate these risks. The defense provides an address in North Carolina where the Defendant could purportedly live.  However, this proposal does not explain how she could travel to that location consistent with her safety (based on her health conditions and COVID-19) and the safety of the community, or without presenting an obvious flight risk (based on the 15 year mandatory minimum she faces upon conviction).  Likewise, the defense presents no evidence how she would safely travel to and from court dates in D.C. or how, when, or where,

she would complete the psychological assessment if released to North Carolina. The risks posed by the Defendant's movement across multiple state lines support denial of this motion.

Even assuming arguendo that the travel risks could be mitigated (which they cannot), the proposed address itself also is a non-starter for several reasons. First, by the defense's own admission, the proffered home and custodians have not undergone the required screening and approval by D.C. or North Carolina pretrial for the Defendant in this case. Second, the defense admits that there is already a convicted felon who currently lives at that home, which should be dispositive in assessing whether this could be a suitable address for the Defendant. Finally, defense acknowledges that there would still be "limited" internet usage in the home, which entirely negates any potential risk mitigation in home confinement.

Third, while the Defendant's health concerns are serious, they have largely been raised, considered, and rejected as a basis for the Defendant's release multiple times, including once after the outbreak of the COVID-19 pandemic. See ECF Nos. 26, 32, 38, 49. This is in accord with multiple decisions of this Court, where the decision to release the defendant in the context of COVID-19 still depends on the defendant's dangerousness, even when the defendant presents serious health concerns. *See e.g.*, *United States v. Lin*, 19-cr-387, at *4-5 (TJK) (D.D.C. April 1, 2020) (denying release in an aggravated identity theft conspiracy and noting that "even a heightened risk of infection is but one factor that the Court must balance" and finding the difference between COVID-19 pandemic at Rikers Island and D.C. jail to be "substantial"); *United States v. Whitaker*, 19-cr-351 (DLF) (D.D.C. April 2, 2020) (denying release pending sentencing in a firearms case even though the defendant claimed bronchitis, allergies, and asthma); *United States v. Mathis*, 19-cr-330 (CJN) (D.D.C. April 14, 2020) (denying release post-plea, and then

denying a motion for reconsideration in a an obscene materials to a minor case despite existence of hypertension); *United States v. Young*, 19-cr-416 (EGS) (D.D.C. May 28, 2020) (denying pretrial release in a distribution of child pornography case despite defendant's documented medical conditions); *but see United States v. Harris*, 19-cr-356 (RDM) (D.D.C. March 26, 2020) (releasing defendant in a child exploitation case in part because of COVID-19 pandemic, along with the expert opinion signifying the defendant's limited danger); *United States v. Johnson*, 19-cr-52 (TSC) (D.D.C. April 8, 2020) (granting pretrial release in a felon in possession case where defendant had documented medical issues, and two prior trial postponements due to such documented issues). As discussed *infra*, this continues to be true post-*Banks*.[1]

The government appreciates the gravity of this global pandemic and is committed to ensuring the safety and health of inmates like the defendant.[2] And should circumstances change at the DOC, to the point that the defendant's health is in greater acute jeopardy, the defendant may request reconsideration. But at this stage and at this time, based on the information provided by DOC, DOC appears dedicated and willing to address this public health crisis in its treatment of

---

[1] The invocation of the pandemic alone does not cause the defendant's release even under 18 U.S.C. § 3142(i) (which is not requested by the defense here). *See United States v. Phillips*, 20-cr-36, at *2 (ABJ) (D.D.C. April 10, 2020) ("[T]he defendant has focused almost exclusively on the virus, without addressing the facts that relate to him specifically, and following his argument to its logical conclusion would mean that the courts are now obliged to open the doors and release every person at the jail who is awaiting trial. That cannot be the right answer, and judges all over the country have emphasized that these decisions must be made on a case by case basis.").

[2] In fact, as this Court may be well aware, the government has meaningfully endeavored – on a case-by-case basis – to permit temporary release to those who actually need release. This includes non-violent offenders who have verified serious health risk and are otherwise vulnerable. The pandemic, however scary, does not change the circumstances that led the government and the court to previously conclude that the offender represented a serious risk to the community. The government will continue to work with the defense bar to address those with health concerns.

COVID positive defendants.[3] Given that, as well as the facts of this case, which demonstrate the Defendant presents a clear danger to the community that (due to the electronic based nature of the offense) would not be mitigated by home confinement even if feasible, the Defendant should continue to be held pending trial.

**III.     The Defendant's Incarceration Does Not Constitute a Violation of the Fifth or Eight Amendment And Does Not Warrant Release under *Banks v. Booth*.**

The Defendant also challenges her continued incarceration on constitutional grounds, but does not speak with sufficient specificity as to how these arguments apply to the facts and circumstances in her particular case. That is because she cannot sustain such a challenge.

Release has not been granted for alleged constitutional violations related to COVID-19, including in *Banks v. Booth*, relied upon by the defendant. As the Court is well aware, while the Court in *Banks v. Booth* found preliminarily that the pre-trial plaintiffs were likely to succeed on their Fifth Amendment deliberate indifference claims, it concluded that release was <u>not</u> the appropriate relief at this time, even for the misdemeanor defendants accused of far less serious offenses than the Defendant has been indicted on in the instant case. *Banks v. Booth*, No. CV 20-849(CKK), 2020 WL 1914896, *26 (D.D.C. Apr. 19, 2020).

Instead of releasing defendants, the Court issued a detailed temporary restraining order requiring that the DOC take multiple affirmative steps to help safeguard the health and safety of inmates. Specifically, among other things, the Court ordered that the DOC monitor and track any inmates who experience COVID symptoms, ensure the proper use of personal protective equipment, implement certain cell restrictions and quarantine protocols, and develop and

---

[3] The U.S. Attorney's Office continues consulting with the DOC on a frequent basis in light of the rapidly-changing situation.

implement policies restricting inmate interaction. Id. at 27-31. The Court also acknowledged that further development of the record in the ongoing litigation "may show that [DOC is] taking sufficient precautions" and that "[DOC's] response continues to evolve." Id. at 22.

Chief Judge Howell has stated that "the Court has confidence that the D.C. Department of Corrections . . . will do everything it can to comply with [the April 19 *Banks*] order so as to prevent the further spread of the virus to its residents and staff." *United States v. Sagastume-Galicia*, 20-cr-40, at *10 (BAH) (D.D.C. April 22, 2020) (ECF No. 10). The Government agrees with the Chief Judge, and there is substantial reason to believe that the conditions will improve for inmates as DOC complies with the order in *Banks* and it continues to implement the protocols contained therein.[4]

Several judges have already addressed claims for release in the pre-trial context subsequent to the Court's findings in *Banks*, and have declined to release defendants on the basis of an alleged constitutional violations. *See e.g.*, *United States v. Sagastume-Galicia*, 20-cr-40 (BAH) (D.D.C. April 22, 2020) (ECF No. 10); *United States v. Otunyo*, 18-cr-251 (BAH), 2020 WL 2065041, at *7 (D.D.C. Apr. 28, 2020) (finding that "DOC is taking steps to comply with [the *Banks*] directives," and that "the *Banks* decision, standing alone, does not justify defendant's release from detention."); *United States v. Stewart*, 17-cr-148 (EGS) (D.D.C. May 1, 2020) (ECF No. 82); *United States v. Spann*, 19-cr-252 (ABJ) (D.D.C. May 3, 2020) (ECF No. 44); *United States v. Kennedy*, 19-CR-371 (ABJ) (D.D.C. May 5, 2020) (ECF No. 32); *United States v. McGarrah* 20-CR-42 (JDB) (D.D.C. May 22, 2020) (ECF No. 32); *United States v. Young*, 19-cr-416 (EGS) (D.D.C. May 28, 2020).

---

[4] As noted by the government's Response to the D.C. Defendants' Motion to Join the United States as a Necessary Party, 20-cv-849 (ECF No. 46), the government does not operate or have authority over the D.C. Central Detention or Correctional Treatment Facility, and thus cannot directly address or alter inmates' conditions of confinement at those facilities.

11

As Judge Amy Berman Jackson stated after a detailed analysis of *Banks* in her decision in *United States v. Kennedy*, 19-CR-371 (D.D.C. May 5, 2020) (ECF No. 32), "[u]nder these circumstances, the Court cannot find at this time that the Constitution requires the release of an individual whose release would contravene the Bail Reform Act, and the defendant has not pointed the Court to any authority that would call for that outcome."

The same is true here. In *Banks*, the Court did not release pre-trial defendants accused of far less serious offenses than the defendant in this case, who is indicted on multiple violent offenses against children, one of which carries a fifteen year mandatory minimum sentence. Moreover, the contested *Banks* litigation is ongoing, and every indication is that the DOC has and will improve its operations in a manner that will better provide for the safety of inmates as it continues. As in *Kennedy*, where the Defendant's release would by contrary to the Bail Reform Act, the Defendant here should continue to be held at this time.

**WHEREFORE**, for the foregoing reasons and for any other such reasons as may appear to the Court, the government respectfully requests that the Court deny the defense's latest motion for review of the order of detention.

        Respectfully submitted,
        MICHAEL R. SHERWIN
        Acting United States Attorney

        By: ____/s/_____
        NICHOLAS MIRANDA
        Assistant United States Attorney
        D.C. Bar No. 995769
        555 4th Street, N.W.,
        Washington, D.C. 20530
        202-252-7011
        Nicholas.Miranda@usdoj.gov

Dated: **June 15, 2020**