```
 1                 BEFORE THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,        .
                                       .  Case Number 19-cr-391
 4              Plaintiff,             .
                                       .
 5         vs.                         .
                                       .  Washington, D.C.
 6    BRITTANY BAILEY,                 .  July 19, 2022
                                       .  1:08 p.m.
 7              Defendant.             .
      - - - - - - - - - - - - - - - -

 8

 9                  TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE JOHN D. BATES
10                   UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12    For the United States:      CAROLINE BURRELL, AUSA
                                  United States Attorney's Office
13                                601 D Street Northwest
                                  Washington, D.C. 20579
14

15    For the Defendant:         SANTHA SONENBERG, ESQ.
                                  5217 42nd Street Northwest
16                                Washington, D.C. 20015

17                                KIRA ANNE WEST, ESQ.
                                  Law Office of Kira West
18                                712 H St Northeast
                                  Unit 509
19                                Washington, D.C. 20002

20    Official Court Reporter:    SARA A. WICK, RPR, CRR
                                  United States District Court
21                                    for the District of Columbia
                                  333 Constitution Avenue Northwest
22                                Room 4704-B
                                  Washington, D.C. 20001
23                                202-354-3284

24
      Proceedings recorded by stenotype shorthand.
25    Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S

 2        (Call to order of the court.)

 3            COURTROOM DEPUTY:  Your Honor, we are in Criminal

 4   Action 19-391, the United States of America versus Brittany

 5   Bailey.

 6        If I can have the parties identify themselves for the

 7   record, beginning with the United States.

 8            MS. BURRELL:  Good afternoon, Your Honor.  Caroline

 9   Burrell on behalf of the government.

10            THE COURT:  Ms. Burrell.

11            MS. SONENBERG:  Good afternoon, Your Honor.  Santha

12   Sonenberg on behalf of Ms. Bailey.  I'm not sure if this is on.

13            THE COURT:  Is the microphone on?  Can you tell?

14            MS. WEST:  Here.  You've got to push it.  It's on now,

15   Your Honor.

16            THE COURT:  Okay.  Thank you.

17            MS. WEST:  Kira Anne West appearing, Your Honor, for

18   Ms. Bailey.  I believe that I'm here for a limited purpose.  I'm

19   not totally sure why I'm here, but I'm here because you asked me

20   to be here.  So I'm here.

21            THE COURT:  You're here, but it is going to be

22   limited, I agree with that.

23            MS. WEST:  I do -- well, there's an issue that came up

24   with the U.S. Marshals.  So I may have to excuse myself for a

25   moment to talk to another U.S. marshal about shoes for
```

1    Ms. Bailey, but we will get to that.

2              THE COURT:  Do that however you wish to do it.  If you

3    wish to have a conversation with the marshal, I don't think we

4    need you in court the whole time, but --

5              MS. WEST:  Thank you, Your Honor.

6              THE COURT:  All right.  So I need some guidance.

7    Obviously, we're here to hear from both sides on where we should

8    be headed.  We have a motion that's been filed, two motions

9    actually.  One is a motion to file under seal, which I will

10   grant.  And the other is a motion for modification of detention

11   order.  And then hanging over that is the prospect of another

12   motion, which would be a motion to withdraw the plea.  And then

13   hanging over that is, I guess, the lack of success, at least as

14   it's been presented to me, of any attempt to reach a modified

15   resolution in this case.

16      But I need to hear from you all in terms of where you think

17   we're headed and how we're going to get there.  And I'm happy to

18   start with you, Ms. Sonenberg.

19             MS. SONENBERG:  Thank you, Your Honor.

20      And first, I apologize for the belated submission of the

21   motion.  As I told Ms. Burrell, I was out of commission for a

22   while, very sick with COVID.  So I couldn't even see Ms. Bailey

23   for a while.  And as the Court and the government can see,

24   getting in touch with a number of other entities to substantiate

25   the points we made took me a while.

1    THE COURT:  Unless the government isn't going to agree

2  with you, I'm not going to be in a position to resolve that

3  issue.

4    MS. SONENBERG:  And that's understood.  I just wanted

5  to sort of fall on the sword a little bit, if you will, with

6  respect to that.  So that goes to the first motion.

7    I do think, however, referenced in that motion are some

8  issues that directly relate to why Ms. West generously came with

9  another pair of shoes for Ms. Bailey.  Ms. Bailey has been

10  prescribed a new brace for her foot.  This is the brace she's

11  supposed to be wearing.

12    THE COURT:  You're the first person to ever kick the

13  microphone.

14    MS. SONENBERG:  I apologize.  Which is pretty good for

15  someone as short as I am.

16    This brace does not fit in the shoes she has, and so she

17  needs different shoes.  I have a letter from Mr. Davids to that

18  effect, but we haven't been able to effectuate that.  I don't

19  think the government -- I assume would not object to at least an

20  order that Ms. Bailey be allowed to have a pair of shoes that

21  can accommodate the brace that's medically necessary for her,

22  leaving aside the other points in the motion for modification,

23  which I understand.  But this is something that is adversely

24  affecting her health day in and day out.

25    THE COURT:  My guess is it isn't the government,

1    meaning the United States as represented through the United

2    States Attorney's Office, that is any kind of obstacle here.

3    It's the officials who are charged with monitoring Ms. Bailey's

4    incarceration, and they may not have been fully consulted on

5    this.  I don't know.  It's the Marshals Service that actually

6    has authority with respect to Ms. Bailey, not Department of

7    Corrections, at least some responsibility.  In any event, I hope

8    it's something you can work out easily today.

9            MS. SONENBERG:  So that's sort of a subpart, if you

10   will, of the motion.

11       With respect to the other issues about a motion to withdraw

12   guilty plea and where we go thereafter, I need additional time

13   to talk to Ms. Bailey about that.  In the past 48 or 72 hours,

14   I've done some additional research, spoken to some additional

15   people, and I think that there is -- there may be something we

16   want to pursue.  But again -- and I apologize.  I'm a little

17   late to all of this, having relatively recently gotten into the

18   case and trying to unearth options here.

19       The option that I proposed to the government they were

20   unwilling to accept.  And so the only option they're willing to

21   accept is if we pursue a lack of criminal responsibility.

22           THE COURT:  They can speak for themselves, but I

23   understand you to be representing that the government is

24   agreeing that the plea can be withdrawn --

25           MS. SONENBERG:  Yes.

1    THE COURT:  -- and that then you can move for --
2 however you frame it.  I'm not sure exactly how you will frame
3 it in terms of the lack of criminal responsibility.
4    Is that an accurate understanding of where you understand
5 the government to be?
6    MS. SONENBERG:  Yes.  Based on an e-mail Ms. Burrell
7 sent me in response to a letter I had sent the government in
8 June, they were not amenable to my proposed alternate
9 resolution, but they said -- but the government said it would
10 not oppose a motion to withdraw the plea.
11    THE COURT:  All right.  So your proposal to me at this
12 moment, I take it, is "give me a little more time to talk to
13 Ms. Bailey"?
14    MS. SONENBERG:  In essence, that's correct, Your
15 Honor.
16    THE COURT:  All right.  Let me hear from the
17 government for a moment, and then we will get back to --
18    MS. SONENBERG:  Of course.
19    THE COURT:  -- trying to map this out.
20    Ms. Burrell?
21    MS. BURRELL:  Yes, Your Honor.  First of all, just in
22 terms of the shoes, I am able to shed a little bit of light on
23 that.  Would the Court be amenable --
24    THE COURT:  It's up to you.  When you're speaking, you
25 can take the mask off as far as I'm concerned.  You have the

1   Court's permission in the courtroom.

2            MS. BURRELL:  Thank you.  So when I received defense

3   counsel's filing yesterday, I reached out to the Marshals

4   Service to see what I could find out, and I also reached out to

5   the general counsel at the D.C. Jail.

6       I don't have full information yet, but what I can tell the

7   Court is that there was a request for -- let me see, a request

8   for a fitting of the new shoes, but that was only received by

9   the Marshals Service this morning.  So it's currently being

10  reviewed.  It says, "There is a need for specialized shoes.

11  Please assist with appointment to Hangers Clinic," which, I

12  believe, is where Ms. Bailey is being seen, "for further

13  evaluation and fitting for shoes."

14       So I believe that --

15            THE COURT:  It's in process?

16            MS. BURRELL:  -- it's in process, yes.  And I asked

17  the Marshals Service generally about how long it takes for a

18  decision to be reached on these requests, and the answer I

19  received was it depends, it could be --

20            THE COURT:  Are they lawyers?

21            MS. BURRELL:  You would think so, yeah.  It could be

22  today.  It could be a week or two weeks if additional

23  information is needed.

24       There's also a similar request for a --

25            THE COURT:  Do I take it, by the way, that

1    Ms. Sonenberg and I are accurate in the assumption that the

2    government would have no objection as long as the marshals are

3    comfortable with it --

4              MS. BURRELL:  Yes.

5              THE COURT:  -- with the new shoes?

6              MS. BURRELL:  Yes, that's correct.

7              THE COURT:  All right.

8              MS. BURRELL:  There was also a request submitted this

9    morning for management of the baclofen pump refills -- I may be

10   mispronouncing that -- and the management of how those are being

11   refilled.  Again, it was just received today.  It's being

12   reviewed.

13             THE COURT:  By whom?

14             MS. BURRELL:  By the Marshals Service, yes.  And I

15   reached out to the general counsel at D.C. Jail to find out

16   about the missed appointments that are described in the defense

17   filing to see whether they were, in fact, missed and, if so,

18   why.

19        I'm still waiting on that response, but I will provide it

20   to the Court and to defense counsel as soon as I receive it.

21             THE COURT:  Okay.  I appreciate those efforts.

22             MS. BURRELL:  Thank you.

23        In terms of the plea withdrawal, defense counsel is

24   generally correct.  How this came about, at least how it was

25   presented to me, is that Ms. West -- when we were preparing for

1    sentencing, Ms. West realized that she had not discussed the

2    possibility of an insanity defense with Ms. Bailey.  And based

3    on Dr. Hyde's report, Ms. West believed that that was something

4    that she should do.

5        I want to be clear that the government, quite frankly, does

6    not place a lot of weight on Dr. Hyde's report for reasons I

7    don't think I need to get into here.  However, what we are

8    concerned about is the possibility of an ineffective assistance

9    claim.

10       So our position was that if Ms. Bailey would like to

11   withdraw her plea to pursue that after discussions with counsel,

12   then we will not oppose that, both to protect any conviction and

13   also just in the interest of justice.

14           THE COURT:  Pronouns are important to me.  "To pursue

15   that," what's the "that" you're referring to?

16           MS. BURRELL:  To pursue an insanity defense.

17           THE COURT:  I don't think an insanity defense is what

18   is being mentioned by the defense, to my knowledge.

19           MS. BURRELL:  Or lack of criminal responsibility

20   defense, yes.

21           THE COURT:  Okay.

22           MS. BURRELL:  And so that's our position.  We're not

23   modifying the plea.  If Ms. Bailey chooses to pursue the plea

24   and proceed to sentencing, we would ask the Court to do just an

25   additional inquiry of her to the extent that she understands

1    that she could have pursued this and knowingly chose not to

2    after discussion.

3         That's kind of where the government is at right now.

4              THE COURT:  All right.  Thank you, Ms. Burrell.

5         Ms. Sonenberg, back to you.

6              MS. SONENBERG:  Your Honor, I think the Court is

7    correct, and I do think there's a distinction with a difference

8    that the Court articulated between insanity and lack of criminal

9    responsibility.

10        That said, with respect to this issue of when the -- I have

11   a letter from Mr. Davids, I was just looking for it through all

12   of the Department of Corrections records I received last week,

13   from 2021 indicating that Ms. Bailey needed different shoes for

14   this -- for the appropriate brace.

15        So here we are in July of 2022, and I believe it was --

16   it's been months, a year.

17             THE COURT:  We can take a lot of time on the shoe

18   issue, but I would propose that we don't.  I think we should

19   resolve the shoe issue pretty easily by my asking the Marshals

20   Service to expedite its consideration of the shoe issue, I'm

21   just going to call it, expedite it so that they can resolve it

22   within 24 hours.  And if the marshals will let me know their

23   resolution.  If they, let's just call it, approve, then the

24   issue is over, and the past isn't important, I don't think, to

25   anything I can do now.  It might be relevant ultimately to your

motion for modification of detention.  But I'm not going to

decide that now.

          MS. SONENBERG:  Understood.

          THE COURT:  I need more information on that, and the

government needs the opportunity to respond more fully to it.

So it may be relevant to that just by looking at okay, here's

how she's treated and here's the difficulty she's undergoing.

          But we can resolve the question of whether she has the

proper shoes.  Again, I'm using terms that are not meant to be

specific or terms of art.  We can resolve that pretty quickly, I

think, by the marshals just expediting their consideration of

it.

          And then if the marshals, for some reason, say no, then

that can be brought to my attention, and I can decide what

should be done.

          MS. SONENBERG:  Understood.  Thank you, Your Honor.

          THE COURT:  I'm not going to order the Marshals

Service to do anything other than expedite consideration of it

right now.  They have a responsibility, and I need to give them

the opportunity to perform their responsibilities, and they need

to consider all the relevant issues, and I might not off the top

of my head be doing that.  So I want them to have the chance to

look at it.

          And maybe it's something that should have been decided a

long time ago.  I think some of the problem is Marshals Service

versus Department of Corrections, and sometimes the left hand doesn't know what the right hand is doing, and they're separate entities.

MS. SONENBERG:  Okay.  Thank you.

THE COURT:  So we have a representative of the Marshals Service here today, and I think they're hearing what I'm saying, and I just would like that issue addressed expeditiously.

MARSHAL:  Your Honor, as soon as we leave here, I will go over there and let them know.

THE COURT:  Thank you very much.

So with that, Ms. Sonenberg, your suggestion, I take it, would still be let's schedule another proceeding in the not too distant future, but to give you an opportunity to have discussions with Ms. Bailey, give the government an opportunity to respond to the motion for modification of detention order, and these related issues to play out in terms of the shoes or whatever.

And when we are next together, you would be able to give me, I hope, a pretty clear path forward in terms of what you would like to do and the government, its response thereto.

As it now stands, it looks like -- unless your conversations with Ms. Bailey take you elsewhere, it looks like you would be asking to withdraw the plea of guilty, and the government would not be opposing that, and you would be filing

1    what we are calling a motion for lack of criminal

2    responsibility, whatever that motion is.  I don't know if it's a

3    motion for dismissal --

4            MS. SONENBERG:  Your Honor, I'm not sure that it

5    requires a motion, because if it's not an insanity defense,

6    there's no notice requirement.  So it's just, you know, are the

7    elements met such that --

8            THE COURT:  It may not require a motion.  It requires

9    briefing.  The briefing is what I want.  I want insights and

10   analysis.

11           MS. SONENBERG:  Well, the only thing I would say --

12   maybe I'm getting a little ahead of myself -- is I don't think

13   other than insanity and, if I'm not mistaken, alibi -- I mean, I

14   would be prepared to file something ex parte, I guess, is what

15   I'm saying.  But again, maybe -- I don't know if that's a bridge

16   we can cross --

17           THE COURT:  I'm not sure I understood.

18           MS. SONENBERG:  I don't think that there's an

19   obligation to disclose a defense other than -- in other words,

20   my position, at least at this juncture, is that the government

21   can't make out such that even it would survive a Rule 29 motion,

22   for example, the requisite elements of the offense.

23           THE COURT:  Okay.  And how does it get teed up for me?

24           MS. SONENBERG:  Well, that's why I'm prepared to --

25   that's why I said, I'd be prepared to make an ex parte proffer

1    or -- but again, Your Honor, maybe that's something to -- I

2    don't know if it can be deferred, exactly which --

3          THE COURT:  It can be deferred, but I need to hear

4    from both sides.  When you're talking about an ex parte proffer

5    based on whatever you would be saying in that proffer, which

6    might include some position on the law and maybe even reference

7    to some cases, in addition to the factual record of the report

8    that you would rely on, and you would want to do it ex parte,

9    but you would want me to resolve it before trial; right?

10          MS. SONENBERG:  Probably.  Your Honor, I haven't --

11          THE COURT:  We're all thinking about something that's

12    a little unusual.

13          MS. SONENBERG:  Potentially, yes, potentially.

14          THE COURT:  And I need to give the government an

15    opportunity to respond at least to some degree.  You say you

16    would like to do it ex parte.  But the government might, in

17    addition to challenging medical conclusions in the report that

18    you're relying on, they might have some medical evidence of

19    their own.  I don't know.

20       So I need some mechanism to get it teed up for me that's

21    fair to each side.  And I do stress that, fair to each side,

22    including the concept that you just explained, which is you

23    don't necessarily want to reveal the fullness of a defense you

24    might have that you might be presenting at trial.  That's the

25    only reason to have it be ex parte, because you believe that

1    it's something that you would want to be presenting at trial.

2         But they now know about the issue.  You just want to,

3    perhaps, not tell them the details of the defense.

4         MS. SONENBERG:  Right.  It was the government's e-mail

5    that said they don't oppose a motion to withdraw based on lack

6    of criminal responsibility.  That was their --

7         THE COURT:  That's a motion they're talking about, and

8    they're not talking about an ex parte proceeding.  They're

9    talking about a motion, and you seem to be talking about an ex

10   parte proceeding and not a motion, although you're thinking out

11   loud.  I understand that.  We're all doing a little bit of that.

12        MS. SONENBERG:  I was just responding to the Court's

13   suggestion that after a motion to withdraw guilty plea there be

14   a subsequent motion.  It may be that those are better

15   amalgamated and combined in some way.

16        THE COURT:  It may be, except that the government is

17   going to agree to one of them and not to the other.  So to a

18   certain extent, they're going to be separated anyway, because

19   the government seems to be amenable to you withdrawing the

20   guilty plea but not to whatever else you would want.

21        MS. SONENBERG:  Right.  But in any event, it's not

22   ripe yet, so to speak.

23        THE COURT:  Let's let you figure this out from your

24   perspective and perhaps have a discussion with Ms. Burrell, to

25   the extent you feel comfortable doing so and it would be

advantageous to do so, and I will schedule another proceeding.
By that time, I would like to have the motion for modification
of detention ripe so that can be resolved, and I want to be able
to chart the path forward at least, even if we don't have all
the filings on that path forward.

MS. SONENBERG:  Understood.

THE COURT:  So how long do you think we need before we
would next get together?

MS. SONENBERG:  Your Honor, I would think at least
maybe four or five weeks.  I don't know if everyone's going to
be here at the end of August.

THE COURT:  It's a difficult time to be here in that
regard.

MS. SONENBERG:  So it could be at some point in
September as well.

Ms. Bailey would like to address the Court before we
conclude today.

THE COURT:  As long as she consults with counsel and
they're comfortable with her doing so.  I don't want her to do
so without advice of counsel.

MS. SONENBERG:  Yeah.  So --

THE COURT:  So you're talking about 30 days or so,
maybe a little longer.

Any thoughts from the government?  Do you think that's a
reasonable period of time to look at?

1          MS. BURRELL:  Yes, Your Honor, that's fine with me.

2          THE COURT:  All right.  And I will hear from you in a

3    moment, Ms. Bailey, but I would like you to talk to

4    Ms. Sonenberg and Ms. West before I release Ms. West to make

5    sure that they're comfortable and you have the benefit of their

6    advice on whether you should be saying whatever it is you plan

7    to say.  And that's what I would do with any criminal defendant

8    to protect their rights.  It's to protect your rights that I say

9    that.

10         So I need to be looking at the calendar.  I don't have the

11    calendar.  Do you have access to my calendar?

12         COURTROOM DEPUTY:  I don't, Your Honor.

13         THE COURT:  Do you, Julie?

14         LAW CLERK:  Yes.

15         THE COURT:  All right.  I have things on August 4 and

16    August 5, but that's too soon.  So we're looking to the last

17    week in August, and I guess I would defer to counsel's

18    availability.  I do start a trial on September 6th.  Is

19    September 6 a Tuesday?

20         COURTROOM DEPUTY:  It is, Your Honor.

21         THE COURT:  The Friday before is the Friday of Labor

22    Day weekend.  So what's your suggestion, Ms. Sonenberg?

23         MS. SONENBERG:  Your Honor, my suggestion would either

24    be maybe the 24th or 25th or earlier the week of September 2nd,

25    just because I have a very large submission due to Judge Kelly

1    on the 2nd in a January 6 --

2            THE COURT:  The 2nd is what day of the week?

3            MS. SONENBERG:  The 2nd is a Friday.  If we could do

4    Monday, the 29th, or Tuesday, the 30th.  I don't know if the

5    government's available.

6            THE COURT:  Maybe August 31st?

7            MS. SONENBERG:  I can do the 31st, if that's what

8    everyone prefers.  I could do earlier that week also, if that's

9    easier.

10            THE COURT:  Let's go with the 30th.  And I'm free all

11    day the 30th.  So how does the 30th work for you in terms of the

12    timing?

13            MS. SONENBERG:  I'm open that day.

14            THE COURT:  And for the government?

15            MS. BURRELL:  I'm open all day as well.

16            THE COURT:  All right.  Is it easier to do it in the

17    morning?  I don't know in terms of transportation of Ms. Bailey,

18    does it matter whether I do it in the morning or not?  Let's do

19    it in the morning.  I think that -- otherwise, sometimes she

20    would have to come here early in the morning and sit the whole

21    day.  So do it at 10:00?

22            MS. SONENBERG:  Thank you, Your Honor.

23            THE COURT:  All right.  10:00 on August 30th.

24        And there's some things that I would like to see happen in

25    the meantime and would hope to receive communication.  One would

1   be with respect to the shoes and the marshal's judgment and then

2   anything further I need to hear from all of you on that.

3   Hopefully, we can get that resolved in the next day or two, not

4   in the next week or two, but in the next day or two.

5       And then if the government has a response to the motion for

6   modification of detention order, I hope you can get that in --

7   when, Ms. Burrell?

8           MS. BURRELL:  Your Honor, I can file that by the end

9   of next week.

10          THE COURT:  That will be fine.  And if there's any

11  reply to that -- the end of next week would be what date?

12          MS. BURRELL:  The 29th.

13          LAW CLERK:  29th.

14          THE COURT:  So if there's any reply to that, a week

15  later?

16          MS. SONENBERG:  Excuse me?  Any reply --

17          THE COURT:  On the motion for modification of

18  detention, if the government responds the 29th, can you file any

19  reply a week later?

20          MS. SONENBERG:  Yes.

21          THE COURT:  All right.  So that will be the schedule

22  for that.  And do we need to schedule anything else?

23          MS. SONENBERG:  I don't think so.

24          COURTROOM DEPUTY:  The August 30th, is that being set

25  as a status hearing?

```
 1            THE COURT:  It's going to be set as a status, because
 2    I need to sort of capture whatever we're doing at that time.  So
 3    we will just call it a status.
 4        And let me ask again as I've asked for others, in person?
 5            MS. SONENBERG:  I would prefer that, yes, Your Honor.
 6    Wait.
 7        (Defense counsel and defendant conferred.)
 8            THE COURT:  It's likely to be -- it's possible that I
 9    would be addressing and resolving the motion for detention
10    modification if I hadn't already addressed it.  But other than
11    that, it's likely to be more scheduling, you know, what the path
12    forward is and on what time frame.  But we'll do it in person if
13    the defense wants to do it in person.
14            MS. SONENBERG:  No, we can do that remote, Your Honor.
15    The August 30th is remote?
16            THE COURT:  All right.  We will schedule it remotely,
17    then.  And if things change, we can adjust to that.
18            MS. SONENBERG:  Thank you.
19            THE COURT:  Have you had a chance to talk to
20    Ms. Bailey about whether she wants to say something?
21            MS. SONENBERG:  Yes.
22            THE COURT:  So we're going to hear from Ms. Bailey.
23    Do you need to use the microphone where you're seated, or do you
24    want to use that one?
25            THE DEFENDANT:  It doesn't matter to me.
```

1          THE COURT:  If you can use this one, it saves us from

2     having to set something up.

3          THE DEFENDANT:  The issue, the shoe issue, the letter

4     from Austin Davids, he's my orthotist.  So he manufactures the

5     brace.  He fits me for them and manufactures them.  That was in

6     2020, September, that he ordered this brace and went to the jail

7     to have --

8          THE COURT:  The brace that you now have?

9          THE DEFENDANT:  No, the one that I'm wearing

10     currently.

11          THE COURT:  This one replaces?

12          THE DEFENDANT:  This one is new, yes.  The one that I

13     have on is carbon fiber.  It goes down one side of my leg and

14     into my shoe.  This brace, as you can see, covers my entire leg,

15     and it has a hinge at the ankle so that I'm able to move my

16     ankle.  The one that I'm in now is rigid.  I'm falling a lot,

17     and it's not suitable for my needs now, but it was then.

18          So that was September of 2020 that he asked for the one I'm

19     wearing now to be manufactured.  It didn't happen until a year

20     and a half later.  And Ms. West tried multiple times to reach

21     out.  I know that at my last court date we spoke to you, and you

22     said that if we needed help to let you know at the next court

23     date, and there wasn't a next court date.  So you haven't been

24     made aware.  But now you're aware of the shoe issue.

25          And there's a bigger issue in regards to -- his name is

Dr. Geer.  All these doctors and orthotists are in the same building.  They're all at NRH, National Rehab Hospital.  So they speak.  I was able to get this -- I've never made -- I've never been able to successfully go to an appointment with Mr. Davids, only the first one.  He has scheduled many, and I miss them every time.  I think you have a letter -- or it's in the motion.  I just read it.  And so when I have an appointment to get my baclofen pump refills, which happens every three-and-a-half to four weeks -- he comes into the office and fits me for my brace or gives me my brace.  He doesn't have the ability to see me for an appointment.  They don't take me out.

The baclofen pump appointments are the most important, because my pump will go off and sound an alarm.  If I were to run out of medicine, I would go into cardiac arrest, and there's no -- so I missed that last appointment.  And before, it was that my doctor could text the doctor at the jail because they knew each other.  She retired.  They don't have that same level of communication.  So it's just a worry.

But in the beginning of this year, Dr. Geer saw me, and he requested an MRI of my spine.  I'm having back pain that's at about a 10 out of 10.  It's very difficult for me to sit or lay down.  Like I'm moving my leg right now just to -- it just helps to shift from side to side.  I do it on the phone.  I'm standing.  The back pain is a 10 out of 10.  And I first wrote to medical about my back pain in July of 2020.  They've not been

 1    able to resolve the issue.  So he wrote for an MRI.

 2          And it's actually -- Unity does a lot of things wrong, but

 3    it's actually -- I guess the Marshals Service, they do not

 4    approve two appointments in one day.  And because of the

 5    situation with my baclofen pump, an MRI, the magnet can mess

 6    with the battery in the pump.  So you have to go within one hour

 7    from your MRI to get your pump reset.  We've not been able to

 8    get them to approve.  I went out twice to have this MRI.  I went

 9    to the hospital shackled and everything, and they said they

10    won't do it unless I can go to NRH right after.

11          And we haven't been able to get that approved through the

12    Marshals Service, which is why I haven't been out to get that

13    MRI.  And that's necessary because even back home, I had nerve

14    ablations in my cervical spine, and that kills the nerves so you

15    no longer feel pain.  There's no nerve.  They grow back in about

16    a year, and you have the procedure done again.  He also wants to

17    do steroid injections in my thoracic and lumbar spine.

18          He cannot do any of these procedures -- because he's not

19    done this for me before.  I had it done back home in Missouri.

20    He cannot do these procedures without seeing the MRI.

21          I've asked the jail probably every week for the last, I

22    don't know -- since May about -- I don't want to say

23    definitively, but I've asked them for an X-ray of my back,

24    because they do that in the jail, and it would be a first-step

25    image.  And they responded to me why, you have an MRI coming up.

1  But I can't get out for the MRI.

2      And I just want to know -- two other women have gone to

3  physical therapy in the jail, and you can have heat, you can

4  have -- just things to get me through for a short amount of

5  time, but they haven't.

6      So the shoe issue, the MRI, and I'm not getting my correct

7  medication.  And I think you're aware, I was in the hospital for

8  nine days in May.  I got COVID.  And then I had been telling

9  them for three months that my heart was racing, and they told me

10  that it was panic and anxiety but that they could not prescribe

11  the medication for me because the jail does not allow me to have

12  benzos.  So my heart just kept racing.  And then when you get

13  COVID, the nurse comes every day and puts the pulse ox on your

14  finger, and my heart was staying between 150 and 175, and they

15  were like, your heart's racing, sent me to the hospital.  And

16  they said it was hyperthyroidism, and they put me on two

17  medications.  But I didn't receive them for a couple weeks.

18      And now, I might end up with 5 or 10 milligrams of the

19  medication for my heart, but I'm prescribed 15.  And the nurses

20  just tell me it's not available or -- I have not gone a solid

21  week receiving that and the thyroid medication.

22      In June, my doctor for the pump -- my spasticity is worse

23  because they're not getting me to Botox.  So he prescribed oral

24  baclofen as well.  So I have it in my pump.  But sometimes

25  patients need it orally to help with the muscles.  I've got --

my hand contracted, my neck, and my leg.  If I take my shoes

off, my toes will just curl, and my ankle will come in.  So that

makes sleeping painful, any time I don't have my brace on.  So

they prescribed oral baclofen.  The order ran out in one or two

weeks, and that was in June.  I just got it back this week.

And I put in -- they're called sick calls.  You just write

to the nurse and tell them what you need.  And it's generally

resolved within 72 hours.  But with me and this complicated

medical case, they seem to question everything that I put in,

not from a stance like, oh, we don't believe that -- they have

the medical records from back home.  They just don't want to do

it, you're on too much medication, you know, all these things.

So that's the issue with the baclofen.

I saw a neurologist at Washington Hospital Center in the

fall of '20 or '21, I can't remember, and I've asked to go back

because the jail has -- well, no, sorry, the hospitals, when I

go out, I was having seizures that were recorded.  So they put

me on another seizure medication.

This morning, I would not have been able to stand before

the Court, and when the marshal came to get me, he said, you

sleep hard.  But it's the medication, and I don't need four

seizure medications.  That's just not something -- it wouldn't

happen back home.

And if you have -- for instance, if you go to the doctor

and then another doctor, your doctors can communicate within

MedStar.  But because of the situation that I'm in, they don't

communicate.  So I just end up getting put on another medication

for one issue.  And I'm taking 13 pills in the morning, 12 at

night.  And I also go at 4:00 in the morning to get seizure

medication, and all of it is not necessary.  It's really

affecting -- like I couldn't have stood before you this morning,

I was so out of it.  The neurologist is the only one who can

resolve this issue.  I've asked to go, and nothing's happened.

THE COURT:  All right.  You describe a situation that

is far from ideal.  And I'm sure that your counsel and

ultimately the government as well will look at that, probably

get a copy of this transcript because I think it would probably

be helpful to each side to have what Ms. Bailey is saying her

circumstances are.

But I take it that you just want me to be advised of this

and then take it into account in the context of the request

that's been made to modify your detention?

THE DEFENDANT:  Well, that, and I want Unity to have

to do these things.  I don't know how the process works, but I

just want them to be told that they have to correct -- they have

to get me to these appointments and the MRI needs to be done.  I

know that's a marshal issue, not a Unity issue.  But these other

issues, I appreciate you saying that they would be dealt with.

And the rest of it, I just want them to have to do what they're

supposed to do.

1          THE COURT:  And I think to the extent that I am able

2   to assess those issues and take any action -- and understand,

3   the Court's role is somewhat limited.

4          THE DEFENDANT:  Right.

5          THE COURT:  I don't run either the Marshals Service or

6   the hospitals or the Department of Corrections.  I have certain

7   responsibilities and sometimes can exercise some input and

8   influence.  But I don't run those organizations for any

9   individual detainee.

10      But all of this is relevant, I think, and will be taken

11  into account as we look at any possible modification of the

12  detention order, which could include some order that deals with

13  the conditions and treatment that you're receiving, even if

14  you're not released from detention.  So we will certainly be

15  taking that into account.

16          THE DEFENDANT:  Okay.  Thank you.

17          THE COURT:  Thank you, Ms. Bailey.

18      All right.  So with that, Ms. West, other than retrieving

19  shoes, did you want to say something?

20          MS. WEST:  Your Honor, thank you.  I just wanted the

21  Court to know that I think the breakdown is that the marshals

22  did not know about these requests.  I made phone calls and wrote

23  letters to people but not the Marshals Service.  And this very

24  helpful marshal over here has been helping me this whole time.

25  We're getting there.

1          THE COURT:  And I think we did some things when you

2     were out, and I said and the marshal agreed that they would

3     promptly look at this.

4          MS. WEST:  I think they've called me back, Your Honor,

5     while we've been here, but I didn't answer the phone because, of

6     course, I'm in court.  But it was an unknown number, which tells

7     me that's probably the government.

8          THE COURT:  All right.  So I will look for some

9     communication on that issue that I've called -- and I don't mean

10    to use a loose term that detracts from its seriousness, but I've

11    called the shoe issue.

12          THE DEFENDANT:  That's fine.

13          THE COURT:  We will try to get that resolved in the

14    next day or so with the help of the Marshals Service.  I

15    appreciate everyone's cooperation and assistance.

16     And then on August 30, we will be dealing more fully with

17    both the motion for modification of detention and what I have

18    called the path forward, the possibility of withdrawal of the

19    plea and, if so, what then would be the course that we would

20    follow.

21     I do think it's going to be important that we be somewhat

22    precise -- somewhat precise is an odd term, that we be precise

23    with respect to what it is that's going to be requested.  Again,

24    I'm not criticizing anyone.  But the term "insanity" has been

25    used.  The term "criminal responsibility" has been used.  It's

1    been described as a motion, and then it's been described not as

2    a motion.  We're going to need to be precise both to respect the

3    defendant's rights but also to make sure things get teed up in a

4    way that I can decide them based on the kind of record that I

5    need in order to decide them.

6         So let's work on that collectively and individually, and I

7    will see everyone on -- as it's now scheduled by Zoom on

8    August 30th.

9         Thank you all very much.

10        (Proceedings adjourned at 1:52 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Sara A. Wick, certify that the foregoing is a
correct transcript from the record of proceedings in the
above-entitled matter.

/s/ Sara A. Wick                    August 24, 2022
SIGNATURE OF COURT REPORTER         DATE