**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRITTANY C. BAILEY,<br><br>Defendant. | Criminal Action No. 19-391 (JDB) |

## MEMORANDUM OPINION

Brittany Colleen Bailey has served approximately five years and 10 months of her 15-year sentence for advertising child pornography, and her projected release date is February 10, 2032.[1] Before the Court is Bailey's motion for compassionate release. She contends that her medical issues have substantially diminished her ability to provide self-care within the Bureau of Prisons ("BOP") and that BOP has provided inadequate care for her medical issues that require long-term or specialized care, which has put her at risk of a serious deterioration in health or death—both of which, she argues, are extraordinary and compelling reasons for release. For the following reasons, the Court will deny Bailey's motion.

## BACKGROUND

Bailey, who is now 35 years old, has long suffered from a variety of medical issues stemming from a ███████████████ that she sustained in late 2007. See Revised Presentence Investigation Rep. [ECF No. 111] ("PSR") at 18. Beginning in early 2008, Bailey developed numerous side effects from the ███ including ██████, which is a ████████████ ████████████████████████████ Def.'s Mem. Aid Sent'g, Summ. Eval.

---

[1] Inmate Profile (Jan. 16, 2025) [ECF No. 151] at 86.

Thomas M. Hyde, M.D., Ph.D. (May 25, 2021) [ECF No. 115-2] at 22 ("Hyde Eval."). Bailey's ████, which affects ████ of her body, has created persistent but varied effects, including impaired mobility, chronic pain, muscle spasms, and ████.[2] See, e.g., id. at 23–24; PSR at 22. From approximately 2008 to 2018, Bailey relied on a wheelchair and other assistive devices. PSR at 18. During that period, she also received inpatient treatment ████ times, outpatient services, ████ injections, and took oral medication. Hyde Eval. at 22–23; PSR at 18, 22–23. In 2017, Bailey had a ████ implanted in her body to deliver ████████ intravenously ████████ PSR at 22. Bailey began to walk in February 2018 and ran a five-kilometer race shortly thereafter, although walking was still "very challenging and physically draining." Id. at 23.

About a year later, in May 2019, authorities arrested Bailey on child pornography charges. Arrest Warrant [ECF No. 23] at 1. Bailey's mobility worsened shortly after her arrest, and she began using a wheelchair again in June 2019. See Letter from Brittany Bailey to the Court (Nov. 20, 2022) [ECF No. 109] ("Bailey 2022 Letter") at 2–3. Bailey filed five motions to vacate or modify her pretrial detention order largely based on her medical conditions, which the Court denied.[3]

Bailey pleaded guilty to one count of advertising of child pornography (18 U.S.C. § 2251(d)) in September 2021. Plea Agreement [ECF No. 64] at 1; Min. Entry of Feb. 15, 2023.

---

[2] Bailey's family, friends, and medical providers have repeatedly cast doubt on the veracity of her medical claims, including whether she suffers real ████. See, e.g., PSR at 21; Medical Note of Frances Serrano, RN (Feb. 8, 2024) [ECF No. 144-1] at 31; Medical Note of Frances Serrano, RN (Feb. 9, 2024) [ECF No. 144-1] at 33; Rep. from UNT Health Patient Servs. (Apr. 23, 2024) [ECF No. 144-1] at 41; BOP Health Servs. Note (May 3, 2024) [ECF No. 144-1] at 42–44. The Court assumes the truth of Bailey's alleged medical conditions for current purposes.

[3] See Mot. Revocation Detention Order [ECF No. 36] at 1–3, 5; Order [ECF No. 38]; Emergency Mot. Release Based On Med. Condition & COVID-19 [ECF No. 46] at 1; Order [ECF No. 49]; Second Mot. Release & Mot. Reconsid. Based On Severe Medical Condition & COVID-19 [ECF No. 52] at 7–8; Order [ECF No. 54]; Mot. Modif. Detention Order [ECF No. 80] at 1; Order [ECF No. 83]; Renewed Mot. Modif. Detention Order [ECF No. 101-2] at 1; Order [ECF No. 103]; see also Bailey 2022 Letter at 2–3.

The Court sentenced her to the 15-year mandatory minimum in June 2023. Judgment [ECF No. 123] at 2. Due to her medical conditions, the Court requested that Bailey be placed at Federal Medical Center ("FMC") Carswell, one of BOP's five federal medical facilities. Id.; Our Locations, Fed. Bureau of Prisons, https://www.bop.gov/locations/list.jsp (last accessed Mar. 26, 2025). Prior to her arrival at FMC Carswell on January 9, 2024, Bailey had been incarcerated at the D.C. Jail until October 2023 and then at an administrative security federal detention center in Pennsylvania ("FDC Philadelphia") until January 2024. See U.S.'s Opp'n Def.'s Mot. Comp. Release & Mem. P. & A. Supp. Thereof [ECF No. 144] ("Opp'n") at 12–13.

Shortly after her arrival at FMC Carswell, BOP classified Bailey as a "Care Level ▮" inmate. See Inmate Profile (Jan. 16, 2025) [ECF No. 151] at 86. An inmate's care level is "determined by their medical and or/mental health needs," including the "chronicity, complexity, intensity, and frequency of interventions and services that are required, as well as an inmate's functional capability." Care Level Classification for Med. & Mental Health Conditions or Disabilities, Fed. BOP at 1 (2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf ("BOP Classifications"). In late March 2024, BOP moved Bailey to an in-patient unit, which provides inmates with further assistance performing activities of daily living ("ADLs") including by having a physician and nurses able to monitor inmates "around the clock for safety." BOP Health Servs. Note (Sept. 30, 2024) [ECF No. 144-1] at 84.

In her first year at FMC Carswell, Bailey accumulated a several-hundred-page medical record. She visited numerous doctors, received numerous injections for her ▮▮▮▮ and pain management, had her ▮▮▮▮▮▮ multiple times, and attended at least 16 physical therapy sessions. See, e.g., Resp. to Ct.'s Jan. 13, 2025, Order [ECF No. 151] ("Bailey Suppl.

Br.") at 1–7. Additionally, Bailey received at least 15 assistive devices such as a wheelchair, crutches, a walker, orthotics, and adaptive equipment for her bedroom and bathroom. BOP Devices & Equip. (Jan. 16, 2025) [ECF No. 151] at 74–75.

BOP's care, although extensive, has not been seamless. Shortly after her arrival at FMC Carswell, Bailey's ███████ ███, which requires monthly refills, ran out of medicine. Medical Note of Joseph Fullmer, MD (Jan. 24, 2024) [ECF No. 144-1] ("Fullmer Note") at 30. Despite the alarm on her ████ sounding for three days, the ████ was not timely refilled. Id. Bailey was hospitalized and had emergency surgery to replace and refill the ███. Id. In the first half of 2024, Bailey also suffered several ████ or ████-like episodes, was hospitalized on an emergency basis five times, and alleges delays in scheduling and attending some medical appointments. See generally Mot. Comp. Release & Mem. P. & A. Supp. Thereof [ECF No. 137] ("Mot.") at 2, 9–10.[4]

In May 2024, Bailey filed an administrative request with the prison's warden asking the warden to file a motion for compassionate release on her behalf, which the warden denied in June. See Mot. at 6–7. In September 2024, Bailey then moved this Court for compassionate release.[5] See Mot. The government opposed, see Opp'n, and Bailey filed a reply, see Reply to Opp'n [ECF No. 145] ("Reply"). In early January 2025, the Court ordered supplemental briefing seeking updates on three issues: Bailey's medical issues and treatment needs; Bailey's mobility and ability to perform ADLs; and whether BOP was in compliance with Bailey's medical treatment plan, all

---

[4] See, e.g., BOP Health Servs. Note (Jan. 17, 2024) [ECF No. 144-1] at 29; BOP Health Servs. Note (Feb. 20, 2024) [ECF No. 144-1] at 36; BOP Health Servs. Note (Feb. 23, 2024) [ECF No. 144-1] at 37; BOP Health Servs. Note (Mar. 29, 2024) [ECF No. 144-1] at 38.

[5] In 2018, Congress amended 18 U.S.C. § 3582 to allow both the Director of BOP and inmates who have exhausted administrative remedies to file motions for compassionate release. Compare 18 U.S.C. § 3582(c)(1)(A), with 18 U.S.C. § 3582(c)(1)(A) (2012).

as of January 10, 2025. See Sealed Order [ECF No. 147] at 1–2. The parties responded. See U.S. Resp. to Jan. 13, 2025, Ct. Order [ECF No. 148] ("Gov't Suppl. Br."); Bailey Suppl. Br. The motion is now fully briefed and ripe for decision.[6]

## LEGAL STANDARDS

A "'judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824 (2010) (alteration in original) (quoting 18 U.S.C. § 3582(b)). Section 3582(c)(1)(A), a provision known as "compassionate release," provides a narrow exception to this rule of finality. See, e.g., United States v. Blanchard, Crim. A. No. 18-376 (JEB), 2022 WL 5241879, at *1 (D.D.C. Oct. 6, 2022). As amended by the First Step Act of 2018, § 3582(c)(1)(A) provides that the Court may modify a term of imprisonment if the defendant establishes that "'extraordinary and compelling reasons warrant' such relief." United States v. Merise, Crim. A. No. 6-42 (JDB), 2023 WL 6847034, at *3 (D.D.C. Oct. 17, 2023) (quoting § 3582(c)(1)).

Courts review defendant-filed motions for compassionate release in three steps. A court must consider first "whether the defendant has exhausted [her] administrative remedies," second "whether 'extraordinary and compelling reasons warrant' release," and third "whether release would be consistent with the sentencing 'factors set forth in [18 U.SC. §] 3553(a), to the extent they are applicable.'" United States v. Shepard, Crim. A. No. 7-85 (RDM), 2021 WL 848720, at *2 (D.D.C. Mar. 4, 2021) (quoting § 3582(c)(1)(A)). "Compassionate release is a discretionary power," id. at *6, and even if a defendant establishes extraordinary and compelling reasons for

---

[6] Bailey requested oral argument pursuant to Local Rule 47(f). See Mot. at 1. Because the Court concludes that the parties' briefing is sufficient to resolve the motion, the Court will deny the request. See LCrR 47(f) (granting a request for an oral hearing "shall be within the discretion of the Court"); see also, e.g., United States v. Wilson, Crim. A. No. 96-319 (CKK), 2021 WL 5292457, at *1 n.1 (D.D.C. Aug. 6, 2021).

release, a court may still deny release based on its reconsideration of the § 3553(a) factors, see, e.g., United States v. Wyche, Crim. A. No. 89-36 (RCL), 2022 WL 2643568, at *3 (D.D.C. July 8, 2022).

## ANALYSIS

### I.    Exhaustion of administrative remedies

"A court cannot modify a sentence under the compassionate release statute until 'after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from'" the warden's receipt of the request, "whichever is earlier." Shepard, 2021 WL 848720, at *2 (quoting § 3582(c)(1)(A)).[7] On May 10, 2024, Bailey filed an administrative request that BOP bring a motion for compassionate release on her behalf, which the warden denied on June 17, thereby facially exhausting remedies. See Mot. at 6–7.

The government nonetheless argues that because Bailey did not disclose her administrative request, it is unclear whether she is moving for compassionate release on the same basis—a further requirement for exhaustion. See Opp'n at 8–9; United States v. Douglas, Crim. A. No. 10-171 (JDB), 2020 WL 5816244, at *1–2 (D.D.C. Sept. 30, 2020) (exhaustion requires that the administrative request "be premised on the same facts alleged in the corresponding motion filed with the court" (quoting United States v. Samak, Crim. A. No. 91-189 (SM), 2020 WL 2473780, at *2 (E.D. La. May 13, 2020))). Bailey counters that BOP did not permit her to share the request, and although BOP instructed her counsel to file a Freedom of Information Act request to obtain it, her counsel did not report doing so. Reply at 1–2.

---

[7] Judges in this District "have uniformly held . . . that the exhaustion requirement is not jurisdictional." Shepard, 2021 WL 848720, at *2 (citing United States v. Queen, Crim. A. No. 17-58 (EGS), 2020 WL 3447988, at *2 (D.D.C. June 24, 2020)).

Because the Court ultimately denies Bailey's motion for the failure to demonstrate extraordinary and compelling reasons for release, the Court assumes without deciding that she properly exhausted remedies. See United States v. Wilson, 77 F.4th 837, 841 (D.C. Cir. 2023).[8]

## II.    Extraordinary and compelling reasons warranting release

Bailey must next convince the Court "that 'extraordinary and compelling reasons warrant such a reduction' of the previously imposed prison sentence." United States v. Johnson, 464 F. Supp. 3d 22, 27 (D.D.C. 2020) (quoting § 3582(c)(1)(A)(i)). This is no easy task. Justifying "[c]utting short a duly authorized prison sentence is" a "substantial" burden. Merise, 2023 WL 6847034, at *3 (internal quotation marks omitted). Bailey's justification must be "more than sympathetic," "nothing short of compelling," id. (internal quotation marks omitted), and "both powerful and convincing," id. at *5 (quoting United States v. Jenkins, 50 F.4th 1185, 1197 (D.C. Cir. 2022)). In other words, this is an "exceedingly high" bar. United States v. Shabazz, Crim. A. No. 17-43 (JDB), 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021).

Bailey does not start from scratch. Congress delegated to the United States Sentencing Commission the authority to define circumstances that constitute "extraordinary and compelling reasons" for release. 28 U.S.C. § 994(t). In policy statement U.S.S.G. § 1B1.13, the Commission defined six circumstances, which relate to the defendant's (1) medical circumstances, (2) age, and (3) family circumstances; (4) whether the defendant was a victim of abuse while in custody; (5)

---

[8] Although the Court assumes exhaustion, in light of the central role that Bailey's medical issues played in her prior motions for release, see supra note 3, it is likely that her administrative request was similarly premised on her medical issues as required for exhaustion. See also, e.g., Douglas, 2020 WL 5816244, at *2 (The exhaustion requirement "should not be applied hyper-technically," and a court may consider a defendant's "evolving medical situation . . . where the initial [compassionate] release request has as its central premise the same ongoing health concerns as are presented in the motion." (internal quotation marks omitted)); United States v. Morales, Crim. A. No. 6-248 (JDB), 2021 WL 4622461, at *2 (D.D.C. Oct. 7, 2021) (the request and motion must have "a reasonable degree of overlap" such that BOP had "a fair opportunity to consider whether to make a motion on the defendant's behalf" (internal quotation marks omitted)).

other reasons similar in gravity to those previously described; and (6) whether the defendant received an unusually long sentence. U.S.S.G. § 1B1.13(b)(1)–(6).[9] Because any modification in sentence "must be 'consistent with applicable policy statements issued by the Sentencing Commission,'" Jenkins, 50 F.4th at 1192 (quoting 18 U.S.C. § 3582(c)(1)(A)), U.S.S.G. § 1B1.13 provides a framework for the analysis of extraordinary and compelling reasons. Bailey argues that she meets the first category (on two bases) and the fifth category.[10] See Mot. at 3, 6. The Court addresses each in turn.

### A. Medical circumstances (U.S.S.G. § 1B1.13(b)(1))

#### 1. Bailey has not demonstrated a substantially diminished ability to provide self-care. (§ 1B1.13(b)(1)(B)(i))

Extraordinary and compelling reasons for release exist if "[t]he defendant is suffering from a serious physical or medical condition . . . that substantially diminishes . . . [her] ability . . . to provide self-care within the environment of a correctional facility and from which . . . she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B)(i). Bailey argues her ████ is (1) a serious physical or medical condition (2) that, through her increased ████, has substantially diminished her ability to provide self-care at FMC Carswell and (3) from which she is not expected to recover. See Mot. at 3. The government indicates that Bailey's ████ is a serious physical or medical condition from which she is not expected to recover, Opp'n at 12, so the Court limits

---

[9] Although § 1B1.13 was originally binding only as to BOP-filed motions for compassionate release, many courts considered it persuasive for defendant-filed motions. See, e.g., Jenkins, 50 F.4th at 1195. As amended in November 2023, § 1B1.13 is now binding on defendant-filed motions, too. See, e.g., United States v. Foy, Crim. A. No. 21-108 (TSC), 2024 WL 3471247, at *4 (D.D.C. July 19, 2024).

[10] Bailey sporadically mentions U.S.S.G. § 1B1.13(b)(6) as an additional basis for relief. See Mot. at 6; Reply at 8. Any such argument strains credulity. Bailey has not yet served 10 years of her sentence, which is a threshold requirement. See § 1B1.13(b)(6) (covering defendants who have "served at least 10 years of the term of imprisonment"). Because Bailey does not meet this provision, the Court does not address the government's arguments that § 1B1.13(b)(6) exceeds the Commission's authority and conflicts with 18 U.S.C. § 3582. See Opp'n at 26.

its analysis to whether that condition has substantially diminished Bailey's ability to provide self-care.

Section 1B1.13 does not define "the ability of the defendant to provide self-care." Courts generally interpret the phrase to refer to a defendant's ability to independently ambulate, take care of personal hygiene, and perform other ADLs such as dressing, eating, and taking medication. See, e.g., United States v. Gray, Crim. A. No. 21-637 (JRK), 2024 WL 3345482, at *3 (N.D. Ohio July 8, 2024) (collecting cases); see also BOP Classifications at 3.

Bailey argues that she is increasingly reliant on assistance to ambulate and perform ADLs. Reply at 6–7. The government agrees that Bailey requires assistance with some ADLs but contends that because she generally "ambulates independently" and performs other ADLs (such as ▮▮▮▮ and ▮▮▮▮▮▮) independently or with her assistive devices, and "on numerous occasions" has refused the assistance of available aides," her ability to provide self-care is not substantially diminished. Opp'n at 16.

Beginning with ambulation, Bailey emphasizes that she has used a wheelchair to some extent since June 2019. See Mot. at 1; Bailey 2022 Letter at 3.[11] But the use of a wheelchair does not mean that an individual cannot independently ambulate or perform ADLs. Indeed, Bailey "stated that she was independent, and that she lived a normal life" during the 10 years she was confined to a wheelchair prior to incarceration. PSR at 18; see also, e.g., United States v. Coffer, Crim. A. No. 19-282 (BYP), 2024 WL 4664692, at *4 (N.D. Ohio Nov. 4, 2024) (concluding a

---

[11] Cf. Medical Note of Kimberly G. Heckert, MD (Oct. 23, 2023) [ECF No. 144-1] at 5 (Bailey "ambulates with a rolling walker normally," and could "walk unlimited distance, but feels pain in ▮▮▮▮ when walking longer distances"); BOP Medical Servs. Note (Nov. 7, 2023) [ECF No. 144-1] at 6 (Bailey "is able to ambulate with a walker and requires a[] . . . brace for her left foot/leg.").

wheelchair can aid an individual's "ability to self-care" by making it easier to "attend meals, participate in recreation time, and attend to . . . other personal needs").[12]

Bailey, however, contends that her ambulation issues go beyond mere wheelchair use. She says that " ███████████████ that she [i]s unable to use either crutches or a wheelchair," and that she is awaiting a leg brace that "will completely lock her knee" and "prevent [her] from being able to ambulate independently." Bailey Suppl. Br. at 6. But Bailey's medical records are inconsistent with this description. They show that Bailey successfully uses crutches and a wheelchair and is mobile as a result.[13] For example, as early as May 2024, Bailey could use a wheelchair and transfer between the wheelchair and physical therapy table independently. BOP Medical Servs. Note (May 24, 2024) [ECF No. 144-1] at 19–20. That same month, she was "observed walking before being allowed to walk" independently and "ambulating without assistance," see Note of Lai Pham, RN (May 14, 2024) [ECF No. 144-1] at 18, and she asked "when she . . . [could] try the forearm crutches again," BOP Medical Servs. Note (May 20, 2024) [ECF No. 144-1] at 27. Several months later, Bailey walked with crutches and was observed moving around the unit using her wheelchair and walker.[14]

---

[12] Although "[t]he Court cannot, of course, measure the comparative health of [Bailey] and [defendants in other cases] with any precision," caselaw provides some guidance. See Shepard, 2021 WL 848720, at *6–7.

[13] The Court is mindful that it must "base its factual conclusions on record evidence; it cannot render unsupported medical opinions." United States v. Tolbert, Crim. A. No. 19-236 (JPS), 2024 WL 4949049, at *5 (E.D. Wis. Dec. 3, 2024) (cleaned up) (quoting United States v. Newton, 996 F.3d 485, 490 (7th Cir. 2021)). But where Bailey makes an unsupported claim about an aspect of her medical condition or care that is squarely contradicted—or at least called into question—by the same medical file on which she relies, the Court gives weight to the information in her medical file, too. See United States v. Burr, Crim. A. No. 15-362 (CCE), 2022 WL 17357233, at *7 (M.D.N.C. Dec. 1, 2022).

[14] See BOP Medical Servs. Note (Sept. 3, 2024) [ECF No. 144-1] at 80; BOP Medical Servs. Note (Oct. 28, 2024) [ECF No. 144-1] at 88; BOP Medical Servs. Note (Nov. 11, 2024) [ECF No. 148-1] at 141; BOP Medical Servs. Note (Nov. 18, 2024) [ECF No. 148-1] at 104–05.

By November 2024, Bailey was doing more than merely ambulating around her unit—she was going on walks.[15] In fact, Bailey reported "walking a lot with the night nurse," Physical Therapy Note (Nov. 22, 2024) [ECF No. 151] at 82, including more than one-and-a-half miles at a time multiple times and sometimes with just one crutch.[16] As of December, she used a wheelchair and occasionally walked using one or two crutches and staff assistance. See BOP Medical Servs. Note (Dec. 8, 2024) [ECF No. 151] at 65.

The upshot is Bailey can ambulate using a wheelchair and, to some extent, with crutches and assistance, and the record shows that these forms of assistance do not materially impede or limit her activities within BOP.[17] Cf. United States v. Reychler, Crim. A. No. 18-04 (DLC), 2024 WL 2781940, at *2 (D. Mont. May 30, 2024), aff'd, No. 24-3497, 2024 WL 4903691 (9th Cir. Nov. 27, 2024) (defendant's reliance on a wheelchair "limit[ed] his ability to reach . . . dining and medical facilities"); United States v. Dawson, Crim. A. No. 94-10 (ELH), 2024 WL 3455002, at *10 (D. Md. July 17, 2024) (defendant had not walked in five years, and despite physical therapy, it was not safe for him to use his wheelchair such that he "require[d] assistance with all mobility"). She has therefore failed to demonstrate a substantially diminished ability to ambulate.

Turning to her ADLs, Bailey's medical file presents a similar situation. Although the ADLs with which she needs assistance and the level of assistance she needs fluctuate, her overall

---

[15] BOP Medical Servs. Note (Nov. 4, 2024) [ECF No. 144-1] at 87; BOP Medical Servs. Note (Nov. 18, 2024) [ECF No. 148-1] at 104–05.

[16] See BOP Medical Servs. Note (Nov. 20, 2024) [ECF No. 151] at 69; BOP Medical Servs. Note (Nov. 25, 2024) [ECF No. 148-1] at 89.

[17] Bailey claims that her medical issues preclude her from BOP programming and employment, but her medical file contradicts these claims. Compare Bailey Suppl. Br. at 8–9; with Inmate Profile at 87 (Bailey is on the waitlist for numerous programs and was cleared for food service in January 2024), and Inmate History (Jan. 16, 2025) [ECF No. 148-4] at 2; see also Gov't Suppl. Br. at 9 (Bailey's "current level of mobility does not suggest that she is prevented [from] either securing a BOP job or participating in BOP programming."). Moreover, elsewhere in her motion Bailey emphasizes that she is on the waitlist for various BOP programs. See infra section III.

abilities are not substantially diminished.  In February 2024, Bailey self-reported that she was mostly independent in ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ██████████████  See BOP Medical Servs. Note (Feb. 15, 2024) [ECF No. 144-1] at 47. However, beginning in March she reported a regression, explaining that she "need[ed] help with ███████████████ and other activities" and that she was "not transferring safely" in and out of her wheelchair.  See BOP Medical Servs. Note (Mar. 26, 2024) [ECF No. 144-1] at 14–16; BOP Medical Servs. Note (May 24, 2024) [ECF No. 144-1] at 19–20 (reporting "decreased independence with ADL[s]"); BOP Medical Servs. Note (May 27, 2024) [ECF No. 144-1] at 13 (similar).

Yet Bailey's independence rebounded that summer.  In July, she █████████ without assistance, BOP Medical Servs. Note (July 2, 2024) [ECF No. 144-1] at 73, and since late September, she "has been independent with her ADLs" and "ask[s] assistance if needed," BOP Medical Servs. Note (Oct. 28, 2024) [ECF No. 144-1] at 88; see BOP Medical Servs. Note (Jan. 2, 2025) [ECF No. 151] at 55 (Since September 26, Bailey has required "[m]inimal assist[ance] with transfers to ██████████████████████████ ."").  BOP has also provided devices to help her perform her ADLs, including adaptive equipment for her bedroom and bathroom.  See BOP Devices & Equip. at 74–75.

Ignoring this evidence, Bailey avers that she has substantially diminished abilities because she is a Care Level █ inmate.  See Mot. at 1–2.  Although Bailey is correct that Care Level █ is the highest level of care that BOP provides, she overstates what this designation means.  Care Level █ includes a wide range of inmates, from quadriplegics whose functioning "may be so severely

12

impaired as to require 24-hour skilled nursing care or nursing assistance," to patients who have had head injuries, major surgeries, or high-risk pregnancies. BOP Classifications at 3. In other words, Care Level ▮ may be a necessary condition for substantially diminished abilities, but it's not a sufficient condition. But see United States v. Bravo-Ziranda, Crim. A. No. 18-415 (EK), 2023 WL 4494348, at *4 (N.D. Tex. July 10, 2023) ("The BOP appears to have implicitly recognized that Bravo-Ziranda's medical conditions substantially diminish his ability to provide self-care in the institutional setting because it classified him at Care Level 4.")

Moreover, Bailey's care level and conditions, if anything, mean that she receives additional assistance to enable her to more independently ambulate and perform ADLs. For example, Bailey has a lowered bed with rails from which she can reach her belongings and a call button, and the area around her bed is cleared so that it is easier for her to navigate her room and get in and out of her bed. See BOP Medical Servs. Note (Oct. 2–Nov. 5, 2024) [ECF No. 144-1] at 90. Indeed, Bailey's Care Level ▮ classification helps to demonstrate the seriousness with which BOP treats her condition. It would be more worrisome if BOP inappropriately placed her in a less serious category.

In sum, the record shows that Bailey can ambulate with and, to some extent, without her wheelchair and has been performing at least some ADLs independently or with minimal assistance for months. Bailey has therefore not demonstrated a substantially diminished ability to provide self-care at FMC Carswell.

### 2. Bailey has not demonstrated that BOP provides inadequate care or that she is at risk of a serious deterioration in health. (§ 1B1.13(b)(1)(C))

Extraordinary and compelling reasons also exist if a defendant shows she is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G.

§ 1B1.13(b)(1)(C).  The government agrees that Bailey's ▮▮▮ is a medical condition that requires long-term or specialized medical care but disagrees both that BOP is not providing such care and that Bailey is at risk of serious deterioration in health or death.  Opp'n at 16–17.  The Court addresses both points.

### i.    BOP provides adequate care.

Bailey bears the burden of proving that BOP has not provided adequate care.  The word adequate is key: BOP need not provide "optimal medical care or the care of an inmate's choosing." United States v. Edwards, Crim. A. No. 3-234 (JDB), 2022 WL 2866703, at *4 (D.D.C. July 21, 2022) (internal quotation marks omitted).  Bailey principally argues that shortcomings in refilling her ▮▮▮ and scheduling her ▮▮ injections evince inadequate care.[18]  See Mot. at 2–3.

### a.    ▮▮▮

There is no dispute that BOP failed to timely refill Bailey's ▮▮▮ during her first month at FMC Carswell in early 2024.  See Opp'n at 22–24.  There is also no dispute that as a result, Bailey had emergency surgery to replace and refill the ▮▮ and suffered from acute ▮▮ withdrawal.  See id. at 22–23; Fullmer Note at 30.

Bailey claims this incident "make[s] clear . . . that her incarceration is endangering her life."  Mot. at 9.  Although the Court understands the event was serious and likely preventable—especially considering Bailey's ▮▮ alarm had sounded for three days before it ran empty, id. at 7—the Court disagrees that this singular mistake more than one year ago demonstrates Bailey is

---

[18] Bailey briefly contends that FMC Carswell has "not been accredited by the Joint Commission on Accreditation of Health Care Organizations since the pandemic."  Reply at 2 (emphasis omitted).  Even if true, this does not establish that BOP's care at that facility is inadequate.  See United States v. Mulder, Case No. 25-5027, 2024 WL 4448770, at *5 (10th Cir. Oct. 9, 2024) (affirming denial of compassionate release where defendant had argued his BOP facility "allegedly [wa]s no longer an accredited medical facility").

14

at risk of a serious deterioration in health or death. First, although BOP seemingly erred, it did not completely ignore the issue. Rather, BOP attempted to address her withdrawal with oral ███ because Bailey "had recently transferred to FMC Carswell and had not yet established care with a physician to manage the ███." Opp'n at 24; Fullmer Note at 30.

Next, Bailey does not allege bad faith. In addition to the attempted provision of oral medication just mentioned, BOP has timely refilled Bailey's ███ every month since the incident. See Bailey Suppl. Br. at 9; Opp'n at 24; see also, e.g., BOP Medical Servs. Note (Jan. 7, 2025) [ECF No. 151] at 48. One serious—but not repeated—mistake when Bailey first arrived at FMC Carswell does not establish inadequate care. See, e.g., Coffer, 2024 WL 4664692, at *4–6 ("While Defendant's insulin pump was inadvertently not connected properly one evening . . . the pump was readily reconnected," and defendant is otherwise "regularly [] seen and treated."); United States v. Jarvis, Crim. A. No. 20-561 (JSG), 2024 WL 3039952, at *2 (N.D. Ohio June 18, 2024) (one missed cardiology appointment when defendant transferred facilities was a "disappointing" mistake but "not [an] extraordinary and compelling" reason for release); see also United States v. D'Angelo, Crim. A. No. 13-115 (NT), 2022 WL 10066359, at *5 (D. Me. Oct. 17, 2022) ("[I]t appears that the BOP's recent care has been adequate.").

### b.    ███ injections

Bailey receives ███ injections to treat both her ███ and migraines. She did not receive quarterly injections in 2024, which is the interval she contends is required. Taking the facts in the light most favorable to Bailey, she was due for ███ injections for ███ her first day at FMC Carswell and did not receive any ███-specific injections until November.[19] According to Bailey, this ten-month delay constitutes inadequate care.

---

[19] In truth, neither the record nor the briefing is clear as to how often Bailey required ███ injections for ███ and when she received them. See, e.g., Medical Note of Kimberly G. Heckert, MD (Oct. 23, 2023) [ECF

"[U]ndue delays in treating serious medical conditions" may constitute extraordinary and compelling reasons for release. United States v. Verasawmi, Crim. A. No. 17-254 (FLW), 2022 WL 2763518, at *7 (D.N.J. July 15, 2022). But "undue" indicates that not all delays warrant such relief. To assess whether a delay constitutes an extraordinary and compelling reason—or whether it is "undue"—courts consider several factors, including the length of delay, repetition of delays, nature of the delayed treatment, and explanation. See, e.g., United States v. Burr, Crim. A. No. 15-362 (CCE), 2022 WL 17357233, at *6 (M.D.N.C. Dec. 1, 2022) (delays must be "lengthy and unexplained" and relate to "needed medical care"); United States v. English, Crim. A. No. 19-20164 (TGB), 2022 WL 17853361, at *5 (E.D. Mich. Dec. 22, 2022) (finding extraordinary and compelling reasons from "a history of BOP's gross mismanagement of [defendant's] serious health conditions"). None of these factors indicates an undue delay here.

To start, the singular ten-month delay Bailey alleges is far less than the delays courts have found constitute extraordinary and compelling reasons.[20] See, e.g., United States v. Belin, Crim. A. No. 10-2213 (MV), 2023 WL 3867751, at *5 (D.N.M. June 7, 2023) (more than two-year delay); Burr, 2022 WL 17357233, at *2–4 (two-year delay); United States v. Bell, Crim. A. No. 19-66 (TMB), 2023 WL 8890940, at *6 (D. Alaska Dec. 26, 2023) (multiple delays longer than one year); United States v. Beck, 425 F. Supp. 3d 573, 581 (M.D.N.C. 2019) (at least four multi-month delays); English, 2022 WL 17853361, at *6 (multiple multi-month delays); Verasawmi,

---

No. 144-1] at 5 (noting ▓▓▓ at the D.C. Jail in September 2023); Leuda Pain Mgmt. Report (May 15, 2024) [ECF No. 144-1] at 26 (indicating May 2024 ▓▓▓ injections only addressed migraines); BOP Health Servs. Note (May 20, 2024) [ECF No. 144-1] at 27 (indicating the May 2024 injections addressed ▓▓▓). For the purposes of this motion, the Court resolves these unknowns in the light most favorable to Bailey.

[20] In November 2024, Bailey's doctor approved four quarterly ▓▓▓ treatments, and her BOP records reflect this treatment plan, including February 2025 injections. See Medical Note of Mark Volker, MD (Nov. 12, 2024) [ECF No. 151] at 102–04; BOP Health Servs. Note (Nov. 18, 2024) [ECF No. 148-1] at 109; BOP Medication Summ. (Jan. 16–23, 2025) [ECF No. 151] ("Medication Summ.") at 24.

2022 WL 2763518, at *2–3 (multiple six- to seven-month delays); United States v. Derentz, 608

F. Supp. 3d 189, 193–95 (E.D. Pa. 2022) (BOP's "history" of delays).

    Next, the nature of Bailey's delayed treatment is materially different from cases in which

courts have found inadequate care. ███ injections are but one piece of Bailey's complex

treatment plan for ███ and chronic pain. See, e.g., Decl. of Dr. Kevin Vu [ECF No. 151]

("Vu Decl.") at 17 ¶ 10 (recognizing that Bailey is "receiv[ing] advanced interventions" for her

███, including ███, ███, physical therapy, and assistive devices). The Court does

not question the efficacy of the ███ injections, but it also cannot ignore that during the delay,

Bailey still received ███ refills, oral medication, physical therapy, ███

███ injections,[21] and assistive devices for her ███ and pain management.[22]

    In contrast, where courts have found that delays constituted "extraordinary and

compelling" reasons, the delays were not only generally longer and repetitive but also precluded

early identification and treatment of serious or life-threatening diseases. See, e.g., Belin, 2023 WL

3867751, at *5 (delay in evaluating sign of prostate cancer stalled identification and treatment of

cancer); Burr, 2022 WL 17357233, at *2–4 (same with evaluation of a likely cancerous ulcer);

Beck, 425 F. Supp. 3d at 581–82 (same with evaluation of breast lumps, which allowed cancer to

metastasize and precluded defendant from chemotherapy); Bell, 2023 WL 8890940, at *6 (same

with needle biopsy of lung nodules); Derentz, 608 F. Supp. 3d at 191, 194 (delay in eye operation

---

[21] Bailey received at least three other types of injections for ███ and pain management in 2024. See Medical Report of Munir S. Merchant, MD (July 9, 2024) [ECF No. 144-1] at 74 (███ injections); Medical Report of Mohamed Hussein Baradia, DO (Oct. 10, 2024) [ECF No. 144-1] at 91 ███ injections); BOP Health Servs. Note (Dec. 9, 2024) [ECF No. 151] at 61 (second ███ injections).

[22] See, e.g., BOP Health Servs. Note (May 24, 2024) [ECF No. 144-1] at 20 (explaining Bailey's physical therapy plan for "1 time per week for 15-20 visits"); Physical Therapy Note (Dec. 20, 2024) [ECF No. 151] at 80 (reporting relief after therapy); Medication Summ. at 23–26 (showing Bailey's 28 active prescriptions, including for each medication that Bailey submits is part of her ███ treatment plan); Gov't Suppl. Br. at 9 (noting 16 physical therapy sessions).

rendered eye "inoperable" at later date). The delay in providing one piece of Bailey's multi-part treatment plan for a known medical condition is not analogous to a delay that prevents the identification of a serious or life-threatening disease and thus delays the start of a treatment plan or causes a defendant to miss a critical treatment window.

Finally, BOP's delays were not unreasonable or wholly unexplained. BOP worked throughout 2024 to address Bailey's ███ needs. Although it did not provide quarterly ███ treatments for ███, it provided routine appointments related to her ███ treatments, and Bailey received ███ injections targeted towards her migraines in May 2024. See Leuda Pain Mgmt. Report (May 15, 2024) [ECF No. 144-1] at 26. Bailey also had a ███ appointment scheduled for July 2024, and although her records are not clear on this point, some suggest that July was too soon for another round of ███, so the appointment was rescheduled for September.[23] At the September consultation Bailey was approved for ███ ███ injections, which she then received in November. See Medical Note of Mark Volker, MD (Sept. 16, 2024) [ECF No. 144-1] at 81; Medical Note of Mark Volker, MD (Nov. 12, 2024) [ECF No. 151] at 98–99.

Given this record of BOP attention to Bailey's ███ needs, the Court is not concerned that the delays were the result of bad faith or will continue. Cf. English, 2022 WL 17853361, at *6 ("BOP has continually failed to act with necessary expediency to ensure [defendant] receives urgent and consistent medical care"); Belin, 2023 WL 3867751, at *5 (BOP defied three surgeons' requests over two years to schedule a follow-up appointment). Moreover, although any delay in care is undoubtably frustrating, a lag between consultations for treatment and the treatment itself,

---

[23] See See BOP Health Servs. Note (July 25, 2024) [ECF No. 144-1] at 75; Leuda Pain Mgmt. Report (May 15, 2024) [ECF No. 144-1] at 26 (Bailey was "cautioned to space out ███ from any source by at least 90 days."); BOP Health Servs. Note (Jan. 2, 2025) [ECF No. 151] at 51 (noting the quarterly limit on ███ units); cf. BOP Health Servs. Note (Sept. 3, 2024) [ECF No. 144-1] at 80.

18

as well as the rescheduling of appointments—even important ones—is an unfortunate reality of medical care. The delay in Bailey's ███ injections thus does not constitute inadequate care.

In sum, where, as here, BOP "has consistently provided treatment . . . and worked to address [the defendant's] complaints," even amidst some "negligence, misdiagnosis, or simple disagreement over proper treatment," "nothing in the record demonstrates that [the defendant] is receiving medical treatment so inadequate as to warrant [her] release." United States v. Martinez, Crim. A. No. 10-233S (WMS), 2022 WL 1089671, at *3 (W.D.N.Y. Apr. 12, 2022); see United States v. Dawara, Crim. A. No. 19-414 (JRS), 2024 WL 5082321, at *3 (E.D. Pa. Dec. 11, 2024). Although Bailey might believe these delays are individually and collectively imperfect care, that is not the standard. See Edwards, 2022 WL 2866703, at *4. The Court looks for inadequate care, and it does not find it on this record.

### ii. Bailey has not demonstrated the risk of a serious deterioration in health.

Just as Bailey fails to demonstrate that BOP's care is inadequate, she also fails to demonstrate that she is at a resulting "risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Bailey broadly argues that delays in care have increased her ███. See Vu Decl. ¶ 12 (opining that "intermittent gaps and delays in the treatment of [Bailey's] ███ . . . likely resulted in the further progression" of her ███). And her increased ███, in turn, creates a risk of serious deterioration in health, including "significant impairment of the ability to carry out activities of daily living and function" and ███ ███ Id. ¶ 10. Bailey claims that she is already seriously deteriorating, as she is "confined to a wheelchair," ███ ███ Mot. at 3; and her " ███ ███ prevents her from being able to ambulate in the wheelchair

19



without . . . assistance," Bailey Suppl. Br. at 8–9. She also has ███████ in her ████████,

decreased range of motion, ██████████████████████, and ████████ in her

████████████. Mot. at 3; Bailey Suppl. Br. at 4–5. And she suffers repeated ████████ and falls.

Mot. at 3; Reply at 1;

Assessing whether an individual's health is at risk of serious deterioration is a "fact-intensive analysis." See United States v. Garcia, Crim. A. No. 9-330 (KAM), 2024 WL 4966103, at *4 (E.D.N.Y. Dec. 4, 2024). Beginning with her mobility-related claims, Bailey's statements that she is confined to a wheelchair, cannot ambulate even with the wheelchair, and will require ████████████████████████ to walk are flatly contradicted by her medical record, which indicates that she can walk more than one mile with crutches, self-ambulates in her wheelchair, and has already walked without ██████████████████. See supra section II.A.1. Because Bailey's mobility is at least consistent if not improving, she does not demonstrate a risk of serious deterioration in her health.

On her ████████████, Bailey's medical records once again present a mixed picture. Some days she reports regressions, such as ████████████████████ that she ██████████████ ████████████████ BOP Health Servs. Note (Jan. 2, 2025) [ECF No. 151] at 51, and increased muscle spasms, BOP Health Servs. Note (Dec. 11, 2024) [ECF No. 151] at 59. On other days, her reports indicate a more consistent baseline. See BOP Health Servs. Note (Jan. 7, 2025) [ECF No. 148-1] at 10 (Bailey "has no complaints other than chronic pain").[24] And sometimes she reports improvements, including that physical therapy is helping ████████████████████ ████████████████ and walking ████████████████████████████████ Physical Therapy

---

[24] See Physical Therapy Note (Jan. 3, 2025) [ECF No. 151] at 77 (reporting some continued pain and some improvements): Physical Therapy Note (Nov. 15, 2024) [ECF No. 151] at 83 (same).

Note (Nov. 22, 2024) [ECF No. 151] at 82.  This mixed record, which includes some █████ improvements, does not evince a risk of serious deterioration in health.

Finally, Bailey's ████ and falls do not appear to be worsening.  Bailey has suffered ████ since 2008.  See PSR at 22.  Although her ████ have continued during her incarceration, Bailey's medical records indicate that they have decreased in severity since early 2024, and she has not been hospitalized for a ████ since October.  See BOP Health Servs. Note (Oct. 15, 2024) [ECF No. 144-1] at 93; BOP Health Servs. Note (Jan. 2, 2025) [ECF No. 151] at 51 (Bailey reporting continued ████ at night).  And Bailey has repeatedly declined treatment for her ████.  See, e.g., BOP Health Servs. Note (Mar. 29, 2024) [ECF No. 144-1] at 38 ("As medical staff move inmate Bailey to the stretcher, she ceases her ████ like activity and begins looking around," and she states "she is fine and wishes to go back to her unit."); Opp'n at 19–23 (collecting other similar instances).  It is inconsistent for Bailey to both reject treatment for her ████ and claim they pose a risk of serious deterioration in her health.  Furthermore, although ████ disorders vary, other courts have concluded they are not a basis for compassionate release.[25]

The Court understands Bailey's frustration with the serious and persistent effects of her ████.  Although her "medical situation has likely impaired [her] quality of life and may make [her] more prone to falls . . . pain, and other conditions," these concerns "do not show that [s]he is imminently at risk of death or serious deterioration."  United States v. Pouryan, Crim. A. No. 11-111 (NRB), 2025 WL 521379, at *4 (S.D.N.Y. Feb. 18, 2025).  She has thus not met the

---

[25] See, e.g., United States v. Kelly, Crim. A. No. 15-207 (MAC), 2022 WL 1540413, at *4 (E.D. Tex. May 15, 2022) (collecting cases); United States v. Harwood, Crim. A. No. 14-10042 (CBK), 2022 WL 1082371, at *5 (D.S.D. Apr. 11, 2022); United States v. Wood, Crim. A. No. 8-26 (LJ), 2021 WL 742869, at *3 (E.D. Tenn. Feb. 25, 2021); Order Denying Def.'s Mot. Reduce Sentence, United States v. Kaye, Crim. A. No. 21-80039 (RLR) (S.D. Fla. Feb. 6, 2024) [ECF No. 221] at 2–3.

"exceedingly high bar" of showing extraordinary and compelling reasons for release on this basis. See Shabazz, 2021 WL 4306129, at *6.[26]

### B. Other circumstances (U.S.S.G. § 1B1.13(b)(5))

Bailey's final argument is a catchall: her various maladies and BOP's care together constitute "extraordinary and compelling reasons" for release under subsection 5. See Mot. at 3; U.S.S.G. § 1B1.13(b)(5) ("extraordinary and compelling reasons" may exist from "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in" the other sections, "are similar in gravity").

Bailey's medical issues, including her ███ , ██████ , █████ , and chronic pain, are not extraordinary and compelling reasons for release. Bailey undoubtedly suffers from chronic pain. But the bar for compassionate release is not the mere presence of a complex illness or chronic pain. See, e.g., United States v. Saleh, Crim. A. No. 93-181 (WHP), 2020 WL 3839626, at *5 (S.D.N.Y. July 8, 2020) (the "need for medical care . . . alone is insufficient" for compassionate release); Dawara, 2024 WL 5082321, at *3 ("Daily pain and suffering, without a particular showing of extraordinary circumstance, does not warrant compassionate release.").

Moreover, the Court considered the breadth and severity of Bailey's medical issues at sentencing, and "facts that existed when [a] defendant was sentenced cannot later be construed as extraordinary and compelling" reasons for release. United States v. Hunter, 12 F.4th 555, 562 (6th Cir. 2021) (internal quotation marks omitted); see, e.g., D'Angelo, 2022 WL 10066359, at *4

---

[26] Several courts conclude that "a common sense reading of the compassionate release statute compels the obvious: compassionate release due to medical conditions . . . makes little sense if the defendant would not in fact receive better medical care outside of prison," and hence the defendant must demonstrate "[she] will receive better care" outside of BOP. See Tolbert, 2024 WL 4949049, at *6 (internal quotation marks omitted); see, e.g., United States v. Daniels, Crim. A. No. 15-127 (MAK), 2024 WL 3069814, at *5 (E.D. Pa. June 18, 2024) (same). If this is a required showing, Bailey has not made it. She has not explained, for example, how she would manage her monthly ████ ███ refills; get approved for ████ and schedule quarterly injections; and schedule and attend other appointments with fewer delays.

(same and collecting cases); cf. United States v. Gaffey, Crim. A. No. 18-693 (RMB), 2021 WL 1530053, at *9 (S.D.N.Y. Apr. 19, 2021).

BOP's care, taken as a whole, is also not a basis for relief. In addition to the ████ and ████ scheduling issues, Bailey emphasizes a handful of other delays that she argues warrant compassionate release. For example, Bailey requires, but has not yet received, a new leg brace. See Mot. at 10; BOP Health Servs. Note (Feb. 15, 2024) [ECF No. 144-1] at 12. But as Bailey's medical records make clear, BOP is actively addressing this issue. Bailey was "casted and measured for" a custom leg orthotic (for her knee, ankle, and foot) and shoes in January 2025, and they are expected to arrive in late April 2025. BOP Health Servs. Note (Jan. 22, 2025) [ECF No. 151] at 36. And she has not been without orthotics in the interim. Throughout 2024, Bailey was prescribed other orthotics and related gear, and she ambulated with them. See, e.g., UNT Health Patient Servs. (May 29, 2024) [ECF No. 144-1] at 72 (Bailey received shoes to accommodate her leg brace).

Next, Bailey argues that BOP has delayed in scheduling three related medical procedures: an MRI, a CT scan, and a ████████████████ , the last of which her doctor stated was an "urgent follow up." See BOP Health Servs. Note (Dec. 9, 2024) [ECF No. 151] at 61; Bailey Suppl. Br. at 3. But here again, the record bears no indicia of conduct similar to the high bar of inadequate care. To the contrary, Bailey was first referred for these procedures in December, and by the conclusion of briefing on January 28, BOP had taken multiple actions related to the procedures. BOP had scheduled and taken Bailey to an MRI on January 3, 2025, but the medical providers could not complete the procedure.[27] The MRI and CT were promptly rescheduled for

---

[27] It is unclear why the medical providers could not complete the MRI. Bailey now claims that it was caused by BOP's allegedly incorrect order that she not consume water in advance of the procedure, Bailey Suppl. Br. at 3; BOP Health Servs. Note (Dec. 26, 2024) [ECF No. 151] at 58; but Bailey had previously reported that it was an issue related to her ████ ████ shutting off. See BOP Health Servs. Note (Jan. 3, 2025) [ECF No. 151] at 50.

January 17, "in conjunction with" another medical appointment.  See BOP Health Servs. Note (Jan. 8, 2025) [ECF No. 151] at 46.  Bailey had the MRI but then ███████████ ████████████████ such that the providers could not complete the CT scan.  BOP Health Servs. Note (Jan. 17, 2025) [ECF No. 151] at 38.  As of January 28, the CT had not been rescheduled for a second time and the ████████, for which the January 17 MRI was a prerequisite, had not been scheduled.  Bailey Suppl. Br. at 3.  But all this indicates is that BOP has acted quickly to schedule and reschedule specialty appointments, some of which take time.[28]

Bailey's medical record demonstrates that she "receives frequent medical attention, can consult medical professionals, and has access to medications and surgeries when needed." Dawara, 2024 WL 5082321, at *3; see, e.g., Gaffey, 2021 WL 1530053, at *6–7.  Staff "routinely conduct physical examinations and administer medications on a daily basis," and BOP has generally provided "prompt, comprehensive, and successful treatment" for her conditions.  See Gaffey, 2021 WL 1530053, at *5, *8.  Furthermore, Bailey's medical file indicates some improvements in her mobility, independence, ████████, and chronic pain, and BOP has a history of timely scheduling and rescheduling her numerous appointments.

BOP's care has not been perfect, to be sure.[29]  But to focus only on the delays and ignore BOP's broad and consistent attention to Bailey's various conditions misses the forest for the trees.

---

[28] Bailey sprinkles in examples of other concerns with and alleged delays in BOP's care.  See, e.g., Bailey Suppl. Br. at 9 (Bailey missed unspecified appointments on January 23, 2025, because she could not ambulate and "there was no one to push her"); id. (noting BOP does not carry ████████, one of Bailey's prescriptions, in its formulary); id. (Bailey's wrist braces ██████████████████████ and it is "unclear what will be done" in response); id. at 6 (BOP originally prescribed the wrong sized ████████ for Bailey and corrected it but has not scheduled a follow-up with the ████████).  Because Bailey does not fully brief these arguments—indeed, she often does not fully explain the issues, let alone how long they have persisted and whether she has reported them to BOP—they do not factor heavily into the Court's analysis, even under the catchall provision.

[29] Neither has Bailey's compliance, for that matter.  She has at times refused hospitalization, imaging, and medication, and has failed to perform her prescribed physical therapy exercises.  See, e.g., BOP Philadelphia Note (Oct. 18, 2023) [ECF No. 144-1] at 10; BOP Health Servs. Note (Jan. 17, 2024) [ECF No. 144-1] at 29; Medical Note of Leslie B. Kilpatrick, RN (Feb. 7, 2024) [ECF No. 144-1] at 28; Physical Therapy Note (Nov. 22, 2024) [ECF No. 151] at 82.  Additionally, despite repeated education, BOP staff have observed Bailey performing activities that create

Even before Bailey had filed her motion for compassionate release in September, BOP had—to name just a few things—timely refilled her ███████ ██████ at least eight times, provided one round of ████ injections and held a consultation for a second round, provided one round of ██████ ████ and ███████ injections, and held multiple physical therapy sessions. The Court is thus not "concerned that only its intervention prompted the BOP to provide" adequate care, Verasawmi, 2022 WL 2763518, at *10; nor is the Court concerned that BOP lacks "concrete treatment plans for [Bailey's] serious medical conditions" or that Bailey "will not receive the high level of monitoring required" for her medical issues, English, 2022 WL 17853361, at *7. And it goes without saying that Bailey has not demonstrated "strong, compelling, and uncontradicted" "evidence of BOP negligence and neglect." Burr, 2022 WL 17357233, at *7.

For these reasons, Bailey's medical conditions and BOP's care considered separately and together are not extraordinary and compelling reasons for relief.

### III.    Reconsideration of the § 3553(a) factors

Where, as here, a defendant fails to demonstrate extraordinary and compelling reasons for release, "[t]he Court need not discuss the 18 U.S.C. § 3553(a) factors in detail, as 'an inmate may not be granted compassionate release without a finding of an extraordinary and compelling reason, no matter how the § 3553(a) factors shake out.'" Merise, 2023 WL 6847034, at *9 (quoting Shabazz, 2021 WL 4306129, at *6). The Court will only briefly discuss the factors, because they provide another basis on which the Court would deny Bailey's motion.

The § 3553(a) factors are: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness

---

risks of falls, including transferring in and out of her wheelchair without assistance while on medications that can cause drowsiness and sleeping in her wheelchair. See, e.g., BOP Health Servs. Note (Nov. 6, 2024) [ECF No. 148-1] at 146; BOP Health Servs. Note (Aug. 6, 2024) [ECF No. 144-1] at 79.

of the offense, promote respect for the law, and serve as adequate deterrence; (4) the need to protect the public, (5) the need to provide rehabilitation for the defendant, (6) the types of sentences available, (7) the need to avoid unwarranted sentencing disparities among similarly situated defendants, and (8) the need to provide restitution to victims.

The Court disposes of the first, second, sixth, and seventh factors easily, because Bailey provides no new information from what the Court considered at sentencing. On the first two factors, the Court previously considered the seriousness of Bailey's conduct and her history and characteristics. See Rough Sent'g Tr. ("Tr.") at 65–68, 70; Statement of Reasons [ECF No. 124] at 3; Mot. at 4–5. These factors therefore weigh against release. See, e.g., United States v. Champney, Crim. A. No. 98-131 (RBS), 2024 WL 625278, at *8 (E.D. Pa. Feb. 13, 2024) ("unfortunate upbringing and cognitive challenges" did not favor release because the court had sentenced the defendant "with full knowledge" of them). On the sixth and seventh factors, the Court previously concluded that Bailey's mandatory minimum sentence was appropriate, and she was not similarly situated to the other defendants in the same child pornography chat group. See Tr. at 13–14, 69; 83–84.

A reduction in sentence would fail the third factor by any metric. Less than two years ago, the Court determined that a 15-year sentence—itself a downward variance from Bailey's guideline of life imprisonment—best served the purposes of sentencing. See Tr. at 69; Statement of Reasons at 1–3. The Court agrees with the many district courts that conclude these factors weigh against compassionate release in child pornography cases,[30] where the Court varied downward at

---

[30] See, e.g., United States v. Sears, Crim. A. No. 19-21 (KBJ), 2020 WL 3250717, at *2 (D.D.C. June 16, 2020) (the "disturbing nature" of the defendant's child pornography offenses convinced the Court "that a substantial period of incarceration was, and still is, justified"); United States v. Atkerson, Crim. A. No. 5-158 (DCR), 2024 WL 1451089, at *3 (E.D. Ky. Apr. 3, 2024) (similar); United States v. Conrad, Crim. A. No. 5-931 (MMR), 2021 WL 1379496, at *4 (N.D. Ill. Apr. 12, 2021) (similar).

sentencing,[31] and where the defendant has not served a substantial portion of her sentence[32]—all of which are true here. See, e.g., United States v. King, Crim. A. No. 18-318 (JDB), 2021 WL 880029, at *5 (D.D.C. Mar. 9, 2021).

Fourth, the need to protect the public does not favor release. Bailey emphasizes her low risk of recidivism and contends that her "physical condition . . . severely constrain[s] her" from reoffending. Mot. at 6, 12. But the Court cannot ignore that Bailey has not taken sex offender training in her nearly six years of incarceration,[33] she suffered from similar medical issues at the time of her offense, and the commission of that offense did not require substantial mobility. In other words, "[n]othing offered by [Bailey] discourages the Court from believing, that at this time, [s]he remains a danger" to the community. See Coffer, 2024 WL 4664692, at *7.[34]

On the fifth factor, courts generally consider the defendant's rehabilitative efforts and the existence of a family support network and release plan to facilitate reintegration. See, e.g., United States v. Price, 496 F. Supp. 3d 83, 91 (D.D.C. 2020). Bailey has attended only 14 hours of BOP

---

[31] See, e.g., Coffer, 2024 WL 4664692, at *1, *7; Conrad, 2021 WL 1379496, at *4; see also Verasawmi, 2022 WL 2763518, at *10 ("granting a sentence reduction on top of a variance can create unwarranted sentencing disparities").

[32] See, e.g., United States v. Pawlowski, 967 F.3d 327, 330–31 (3d Cir. 2020) (colleting cases); United States v. Brown, Crim. A. No. 11-152 (JKW), 2024 WL 3357836, at *8 (E.D. Va. July 10, 2024).

[33] The Court acknowledges that Bailey is on the waitlist for this training. Inmate Profile at 87. The government notes that she may have passed up earlier opportunities to take sex offender treatment during her four years at the D.C. Jail—where the U.S. Probation Office recommended it—and at FDC Philadelphia, where BOP also recommended it but Bailey "declined programming recommendations." PSR at 39; BOP Philadelphia Note (Oct. 11, 2023) [ECF No. 144-1] at 8.

[34] See, e.g., Sears, 2020 WL 3250717, at *3; Atkerson, 2024 WL 1451089, at *3; cf. Dawson, 2024 WL 3455002, at *13–15 (85-year-old defendant who had served more than 30 years for murder and had developed "profound disabilities" was "not likely to pose a threat").

programming over nearly six years,[35] BOP rates her life skills as "poor,"[36] and she has presented neither a family support network nor a meaningful release plan. "[B]efore the Court can find that release is in both the defendant's and the community's best interest, defendant must have a viable release plan."  United States v. Powell, 468 F. Supp. 3d 398, 405 (D.D.C. 2020).  Yet Bailey provides no meaningful information on how she would secure assistance performing ADLs and scheduling and attending her litany of appointments.[37]

In sum, less than two years later, the § 3553(a) factors considered at sentencing still weigh heavily against release.

## CONCLUSION

The Court is intimately familiar with Bailey's serious and complex medical issues.  Her medical record demonstrates that BOP provides extensive medical care, including timely refills of her ██████ ██████, numerous medical appointments and forms of treatment, and oral medication and assistive devices.  Additionally, aspects of Bailey's condition seem to have improved in the latter part of 2024.  On this record, Bailey has not met her exceedingly high bar of demonstrating extraordinary and compelling reasons to release her more than nine years early from her 15-year sentence.  And even if she had, less than two years after her sentencing, the 18 U.S.C. § 3553(a)

---

[35] See Inmate Education Data (Nov. 5, 2024) [ECF No. 144-1] at 103. Bailey claims her medical conditions preclude her participation in programs and employment, but her BOP record states she is on the waitlist for several programs, has been cleared for food service, and is pending a work assignment.  Compare Reply at 10, and Bailey Suppl. Br. at 9; with Inmate Profile at 87; Inmate History at 2 (pending work assignment since January 2024); see also Gov't Suppl. Br. at 9.

[36] Female Custody Classification Form (Oct. 2, 2024) [ECF No. 144-1] at 105.

[37] Indeed, where, as here, the basis for compassionate release is medical care, "[t]he inmate's request shall at a minimum contain . . . [p]roposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and . . . information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment." 28 C.F.R. § 571.61(a) (2025).

factors continue to weigh against release. For these and all the foregoing reasons, the Court will deny her motion. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: April 2, 2025